ROB BONTA
Attorney General of California
MARK E. BECKINGTON
Supervising Deputy Attorney General
JANE E. REILLEY
Deputy Attorney General
NICHOLAS R. GREEN
Deputy Attorney General
State Bar No. 323959
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102–7004
  Telephone:  (415) 510–4400
  Fax:  (415) 703–5480
  E-mail:  Nicholas.Green@doj.ca.gov
*Attorneys for Defendant*
*California Secretary of State*
*Shirley N. Weber, Ph.D.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CALIFORNIA COUNCIL OF THE BLIND, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**SHIRLEY N. WEBER, PH.D.,**<br><br>Defendant. | Case No. 3:24-cv-01447-SK<br><br>**DEFENDANT'S SUR-REPLY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:         June 17, 2024<br>Time:        9:30 a.m.<br>Judge:       The Honorable Sallie Kim<br>Trial Date:  Not Set<br>Action Filed:  March 8, 2024 |

**TABLE OF CONTENTS**

**Page**

I. Introduction ............................................................................................................. 1

II. Argument .............................................................................................................. 2

    A. County and individual voter conduct does not determine the meaning of the California Elections Code. ................................................................. 2

    B. The Elections Code does not authorize digital signatures on materials that reflect voter choices or e-fax ballot return. ............................................... 5

    C. Plaintiffs have not shown that they are likely to defeat the Secretary's fundamental alteration defense. ................................................................. 7

    D. Plaintiffs' reply evidence does not alleviate the Secretary's implementation concerns in view of the imminent general election. .............. 9

    E. Plaintiffs' evidence does clearly demonstrate that the Secretary cannot redress their injuries. ................................................................................. 12

III. Conclusion .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alexander v. Choate*
   469 U.S. 287 (1985) ............................................................................................................. 7

*Am. Council of the Blind of Ind. v. Ind. Elec. Comm'n*
   No. 1:20-cv-03118-JMS-MJD, 2022 WL 702257 (S.D. Ind. Mar. 9, 2022) ...................... 2, 11

*Beal Bank, SSB v. Arter & Hadden, LLP*
   42 Cal. 4th 503 (2007) ..................................................................................................... 2, 6

*In re Mitchell*
   977 F.2d 1318 (9th Cir. 1992) ............................................................................................. 2

*In re N.R.*
   15 Cal. 5th 520 (2023) ......................................................................................................... 5

*Libertarian Party v. Eu*
   28 Cal. 3d 535 (1980) ..................................................................................................... 3, 6

*M.S. v. Brown*
   902 F.3d 1076 (9th Cir. 2018) ........................................................................................... 12

*Martin v. PGA Tour, Inc.*
   532 U.S. 661 (2001) ............................................................................................................. 8

*Merrill v. Milligan*
   142 S. Ct. 879 (2022) ......................................................................................................... 11

*Microsoft Corp. v. Franchise Tax Bd.*
   39 Cal. 4th 750 (2006) ......................................................................................................... 2

*Sw. Voter Registration Educ. Project v. Shelley*
   344 F.3d 914 (9th Cir. 2003) ............................................................................................. 11

*Valley Circle Estates v. VTN Consolidated, Inc.*
   33 Cal. 3d 604 (1983) ......................................................................................................... 5

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*
   32 F.4th 852 (9th Cir. 2022) ................................................................................................ 7

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

California Elections Code
   § 303.3 ................................................................................................................................ 12
   § 3011 .................................................................................................................................. 5
   § 3019 .................................................................................................................................. 4
   § 3105 .................................................................................................................................. 6
   § 3106 ............................................................................................................................... 5, 6
   § 19205 ................................................................................................................................ 6
   § 19295 ............................................................................................................................ 6, 7

## I. INTRODUCTION

Plaintiffs' Reply in support of their motion for a preliminary injunction, ECF No. 41 ("Reply"), relies on new evidence that is more notable for what it omits than for what it shows. Moreover, Plaintiffs' additional factual declarations have no bearing on the Court's *legal* construction of the Elections Code, which does not currently authorize either digital signatures on materials that reflect voter choices or the use of electronic facsimile ("e-fax") technology. Of equal importance, Plaintiffs' new evidence—on its own terms—sheds little light on the nature of the accommodation Plaintiffs ask the Court to impose through a mandatory preliminary injunction. Plaintiffs' cherry-picked evidentiary material in fact says almost nothing about e-fax ballot return, *the relief Plaintiffs actually seek*. For example, only one county declaration says anything about the county's e-fax capabilities and neither Plaintiffs' Reply nor any of their declarations so much as acknowledge the real security risks associated with transmitting voter choices over the Internet. For at least these reasons, Plaintiffs' Reply fails to rebut the Secretary's fundamental alteration defense under the disabilities laws. Likewise, Plaintiffs' Reply offers no compelling response to the Secretary's invocation of the principle of federal judicial nonintervention in a state's administration of an imminent election.

In contrast, Plaintiffs' decision to obtain declarations from five different counties explaining how they each administer the vote-by-mail program in their own jurisdictions *does* amply demonstrate why the Secretary cannot redress Plaintiffs' injuries, and accordingly why the Court lacks Article III jurisdiction. These declarations demonstrate Plaintiffs' appreciation of the fact that the counties are responsible for collecting vote-by-mail ballots. If the Court were inclined to grant Plaintiffs' requested relief—and it should not—the only way for the Court to ensure that all counties accept e-faxed ballots in November would be an injunction that binds each of the counties.

Additionally, Plaintiffs' decision to submit extensive new evidence with their Reply has had the effect of extending the hearing date on their motion, moving any ruling on their request for a preliminary injunction to less than four months before the start of the vote-by-mail program in early October. In a similar ballot access case in Indiana, a federal district court denied a

1

preliminary injunction where it was "too close in time" to an election "to implement an RAVBM program." *See Am. Council of the Blind of Ind. v. Ind. Elec. Comm'n*, No. 1:20-cv-03118-JMS-MJD, 2022 WL 702257, at *6 (S.D. Ind. Mar. 9, 2022) (denying injunction with two months to go before election).

In short, none of Plaintiffs' new material, or the arguments based on that material in Plaintiffs' Reply, change the conclusion that their motion should be denied.

## II. ARGUMENT

### A. County and individual voter conduct does not determine the meaning of the California Elections Code.

Plaintiffs accuse the Secretary of "numerous inaccurate factual assertions regarding California's Vote-by-Mail Program[,]" and suggest that their reply evidence is intended to "clarify" the record. Plaintiffs' Reply in Sup. of Mot. for Prelim. Inj. ("Reply"), ECF No. 41, at 4 n.4. But the "inaccurate factual assertions" Plaintiffs purport to identify in the Secretary's Opposition *are not factual assertions at all*. Whether the Elections Code permits or forbids certain practices is not a "factual" issue; it is a pure question of law. *See, e.g.*, *In re Mitchell*, 977 F.2d 1318, 1320 (9th Cir. 1992) ("statutory construction . . . is a pure question of law").

Because statutory interpretation is a legal question, Plaintiffs' reliance on their new factual declarations in connection with their discussion of the features of the vote-by-mail program is misplaced. *See generally* Reply at 4–5. Instead, California law provides the acceptable methods of construction. The fundamental purpose of statutory construction is to "divine and give effect to the Legislature's intent." *Beal Bank, SSB v. Arter & Hadden, LLP*, 42 Cal. 4th 503, 507 (2007). To do so, "in all cases[,]" courts "begin with the language of the governing statute." *Id.* "If the statute's text evinces an unmistakable plain meaning," that is the end of the inquiry. *Id.* at 508. Where the Legislature's intent cannot be determined solely by reference to the text of the statute, California courts may consult "the legislative history and administrative interpretations of the language[,]" among other sources. *Microsoft Corp. v. Franchise Tax Bd.*, 39 Cal. 4th 750, 758 (2006). When interpreting a provision of the Elections Code, the California Supreme Court has emphasized that it is "imperative that the question be placed in the framework of the . . . election

processes of which it is but a part." *Libertarian Party v. Eu*, 28 Cal. 3d 535, 540 (1980) (observing that "Article II of the California Constitution vests the Legislature with plenary power over the conduct of elections in this state.").

Following these principles, declarations suggesting that a handful of California counties may accept ballots returned by e-fax is not evidence of whether the Elections Code *permits* counties to collect marked ballots using that method, which Plaintiffs state is "akin to sending an email[.]" *See* Griffith Decl., ECF No. 13, ¶ 9. Napa County's testimony that it "uses e-fax technology and accepts faxes through various modalities" has nothing to do with whether that practice is in fact authorized under the law as a means of ballot collection. *See* Tuteur Decl., ECF No. 41-2, ¶ 9.[1] Likewise, a declaration provided by one overseas voter who avers that he transmitted his paper cast vote record to a commercial e-fax vendor is equally irrelevant to the question of whether the Elections Code permits a county to receive a ballot by e-fax. *See* Smith Decl., ECF No. 41-3, ¶ 6.[2] The same is true of Plaintiffs' citation to the Federal Voter Assistance Program's "email-to-fax method," which also sheds no light on the legally acceptable means of ballot return in California. *See* Reply at 5.

Plaintiffs' new evidence related to signature curing similarly does not bear on the proper interpretation of the Elections Code: the fact that twelve unidentified counties use Democracy Live's digital signature curing technology has nothing to do with whether that technology is permitted when signing an identification envelope. *See* Finney Decl., ECF No. 41-1, ¶¶ 8–9. Indeed, Democracy Live's signature curing technology is a red herring in any event because the curing process does not involve the transmission of any voter choices. Curing is limited to the circumstance where a voter has already *transmitted* their marked mail ballot to the county registrar in its identification envelope (or their paper cast vote record by facsimile in the case of a

---

[1] The Teuter Declaration fails to establish that Napa County has ever *accepted ballots* by e-fax. *See generally* Tuteur Decl., ECF No. 41-2 (omitting any mention of accepting ballots by e-fax).

[2] The Smith declaration is missing important foundational information on its own terms. Although Mr. Smith avers that he sent his ballot by email to "eFax.com," it contains no facts explaining what happened to Mr. Smith's ballot after he emailed it to this third party or explaining how eFax.com subsequently transmitted his ballot to San Mateo County. *See* Smith Decl., ECF No. 41-3, ¶¶ 6–7.

1  UOCAVA voter), but their signature either does not match the signature in their voter file or they
2  have forgotten to sign the ballot entirely. *See* Cal. Elec Code § 3019(d), (e). To cure a ballot that
3  has a mismatched or missing signature, voters submit either a "signature verification statement,"
4  in the case of a mismatched signature, *see id.* § 3019(d)(1)(E), or an "unsigned identification
5  envelope statement" in the case of a missing signature. *See id.* § 3019(e)(1)(A). Neither statement
6  includes any information about the voter's choices on their actual ballot. *See id.* § 3019(d)(1)(E),
7  (e)(1)(A). In other words, the curing process is meaningfully distinct from the process of signing
8  an identification envelope containing a voter's marked ballot.

9   Furthermore, even if Plaintiffs' evidence was relevant to the Court's construction of the
10  Elections Code—and it is not—the evidence is not strong enough to support the assertions in
11  Plaintiffs' Reply. For example, Plaintiffs contend that "the option to return RAVBM ballots by
12  electronic fax that Plaintiffs seek is already available to California's 116,000 eligible UOCAVA
13  voters." Reply at 5–6. In support of that claim, Plaintiffs have identified *a single county* (out of
14  fifty-eight) that admits it "uses e-fax technology and accepts faxes through various modalities."
15  Tuteur Decl. ¶ 9. That evidence is insufficient to support Plaintiffs' claim that e-fax is available to
16  *every* UOCAVA voter in California, the Elections Code's clear statutory language to the contrary
17  notwithstanding.

18   Ultimately, when Plaintiffs' inapposite arguments and equivocal evidence about the current
19  vote-by-mail program are set aside, their Reply contains only a handful of sentences attempting to
20  justifying their legal characterization of the Elections Code, all of which reduce to the following:
21  "many of [the] supposed statutory restrictions [identified by the Secretary] either do not exist, or
22  are wholly irrelevant." Reply at 4. Plaintiffs' Reply does not mention the legislative history a
23  single time or provide any examination of the purposes of the Code as a whole.

24   Stated differently, Plaintiffs' *legal reasoning* is underdeveloped and fails to meaningfully
25  engage with the detailed statutory analysis and explanation of the legislative purposes that the
26  Secretary provided in her Opposition. *See* Def.'s Opp'n to Mot. for Prelim. Inj., ECF No. 36
27  ("Opp'n"), at 5–9, 22–25. Instead, Plaintiffs rely almost entirely on factual declarations that are
28  irrelevant to the Court's interpretation of the Elections Code. That is no basis to conclude that e-

4

fax is currently permitted and that its expansion would represent only a modest change for California's vote-by-mail program.

### B. The Elections Code does not authorize digital signatures on materials that reflect voter choices or e-fax ballot return.

There is in fact nothing inaccurate about the Secretary's construction of the statutes governing the vote-by-mail program. Start with the requirement for a physical signature on mail ballot identification envelopes. The plain text of Elections Code § 3011 unambiguously states that the identification envelope must include "[a] warning plainly stamped or printed on it that the voter must sign the envelope *in the voter's own handwriting* in order for the ballot to be counted." § 3011(a)(7) (emphasis added). In a footnote of their Reply, Plaintiffs read the highlighted language out of the statute, suggesting implausibly that "voter's own handwriting" can be understood to include a signature that is "captured electronically." Reply at 4 n.5. But the plain text of the statute speaks for itself, and the Court should simply apply the ordinary meaning of "handwriting." *See In re N.R.*, 15 Cal. 5th 520, 539 (2023) (citing *Valley Circle Estates v. VTN Consolidated, Inc.*, 33 Cal. 3d 604, 608–609 (1983)).

Likewise, § 3106 of the Elections Code only authorizes UOCAVA voters to "return their ballot by facsimile transmission." Cal. Elec. Code § 3106(a). By its plain terms, the statute does not authorize "e-fax," "electronic fax," "email," or anything other than "facsimile" transmission. Meriam Webster defines facsimile as "a system of transmitting and reproducing graphic matter (such as printing or still pictures) by means of signals *sent over telephone lines*." (emphasis added).[3] Once again, the plain and ordinary meaning of the words of the Elections Code should end the analysis. *See In re N.R.*, 15 Cal. 5th at 539. But, to the extent there may be any ambiguity in the meaning of the word "facsimile," the rest of the Elections Code and its legislative history make clear that "facsimile" does *not* include e-fax, a form of Internet ballot return that is "akin to sending an email." Griffith Decl. ¶ 9.

---

[3] *Merriam-Webster*, "facsimile," n., https://www.merriam-webster.com/dictionary/facsimile (accessed May 28, 2024).

Indeed, wherever the Elections Code specifically addresses the use of the Internet to transmit voter choices, it prohibits the practice. For example, voting systems—which are used to record and tally voter choices—are explicitly prohibited from connecting to the Internet. Cal Elec. Code § 19205(a). RAVBM systems may neither connect to voting systems nor store voter choices on remote servers or transmit them over the Internet. *See id.* § 19295(a)–(b). These provisions reflect a longstanding and unequivocal legislative decision to prohibit the transmission of voter choices over the Internet. The legislative history of these provisions only reinforces this conclusion. *See, e.g.*, Green Decl., Ex. B, ECF No. 39-2, at 2–4.

Moreover, Elections Code § 3105(f), which relates to the transmission of a *blank* ballot to UOCAVA voters, permits elections officials to provide UOCAVA voters with their ballots by, "mail," "facsimile" or "electronic transmission"—*i.e.*, through a system like a RAVBM. This language plainly reflects a legislative distinction between "facsimile" and "electronic transmission." And notably, § 3106—which relates to *marked* ballot return for UOCAVA voters—does not include the words "electronic transmission." Reading these statutes together as California law requires, there is only one reasonable conclusion: the California Legislature has intentionally authorized the transmission of a *blank* ballot over the Internet and explicitly declined to authorize the return of a *marked* ballot by anything other than the U.S. mail or a traditional fax "sent over telephone lines."

Plaintiffs ask the Court to simply ignore these provisions of the Elections Code. *See generally* Reply at 6. Indeed, they assert that "the Elections Code sections prohibiting [Internet] connections are wholly irrelevant to this motion." *Id.* at 6. But that is fundamentally inconsistent with basic California canons of statutory construction, which require the Court to read the signature and facsimile provisions of the Elections Code in the context of the Code as a whole together with its legislative history in an effort to determine the Legislature's intent. *See Beal Bank*, 42 Cal. 4th at 507; *Libertarian Party*, 28 Cal. 3d at 541. That intent is unmistakable: to withhold materials reflecting voter choices from exposure to the Internet.[4]

---

[4] The failed legislation Plaintiffs identify in their Reply, which would have explicitly authorized electronic signatures and an RAVBM system that provided for ballot return by "electronic

At bottom, Plaintiffs urge the Court to conclude that the Legislature adopted a completely unwritten but somehow implied authorization of Internet voting in the UOCAVA facsimile statute, despite having repeatedly expressed clear disproval of the practice and despite having prohibited it everywhere else in the Code. Declarations from a single county registrar and one overseas voter cannot provide the basis for this proffered construction, which is at odds with the text of the Code and the manifest intent of the California Legislature.

### C. Plaintiffs have not shown that they are likely to defeat the Secretary's fundamental alteration defense.

Plaintiffs' incorrect assertion that the current vote-by-mail system permits digital signatures and e-fax ballot return undergirds their response to the Secretary's fundamental alteration defense. But as the Secretary made clear in her Opposition, Plaintiffs do seek a truly fundamental alteration of the vote-by-mail program by changing the signature requirements for paper cast vote records and opening every jurisdiction in California to Internet voting. The disability statutes do not contemplate judicially-imposed changes that are so sweeping and disruptive to the status quo. *See Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 862 (9th Cir. 2022).

A fundamental alteration is one that will "compromise[] the essential nature of the" program at issue. *Alexander v. Choate*, 469 U.S. 287, 300 (1985). So, the Court's assessment of the degree of alteration Plaintiffs seek must necessarily focus on the difference between the vote-by-mail program as currently offered by the State and the version of the program Plaintiffs ask the Court to impose state-wide through a mandatory injunction. *See, e.g.*, *Where Do We Go Berkeley*, 32 F.4th at 861 ("We must . . . define the scope of the program to determine whether a six-month injunction is a reasonable modification that is required by the ADA or a fundamental alteration that is not.").

Here, though, Plaintiffs rebuttal to the Secretary's fundamental alteration defense falters at the starting line because it begins from an incorrect description of the program. *See* Reply at 11;

---

means," and exempted that system from § 19295's restrictions on RAVBM connections to the Internet, is only further evidence that the *current* Elections Code does not provide for digital signatures or Internet ballot return. *See* Reply at 13, Spencer Decl., ECF No. 41-12, ¶ 3; S.B. 152, Cal. 2021-2022 Reg. Sess., § 4.

7

1  *Martin v. PGA Tour, Inc.*, 532 U.S. 661, 691 (2001) (fundamental alteration defense must
2  "carefully weigh the purpose" of a program's existing requirements). Plaintiffs start from the
3  incorrect premise that digital signatures on identification envelopes and e-fax ballot return (*i.e.*,
4  Internet ballot return) are already authorized under California law for UOCAVA voters. *See*
5  Reply at 11. Then, reasoning from that faulty assumption, Plaintiffs conclude that extending those
6  options to voters with print disabilities would represent only a very modest expansion that does
7  not compromise the essential nature of the program. *See id.* at 11–12. Plaintiffs emphasize that
8  their requested relief "consists of things California and its counties already allow other voters to
9  do." *Id.* at 11.

10  But as the Secretary has repeatedly explained, in careful detail, that is just not true. It bears
11  repeating: the fact that Plaintiffs may have found a handful of instances where counties have used
12  e-fax does not change the Code's requirements. Plaintiffs never explain to the Court how their
13  requested relief avoids fundamentally altering California's vote-by-mail program *if*, as the
14  Elections Code makes plain, that program does not already authorize digital signatures on
15  materials reflecting voter choices and e-fax return for UOCAVA voters.

16  To the extent Plaintiffs accept that they are seeking an extension of current law at all, they
17  also fail to grapple with the practical impacts of that expansion. Indeed, Plaintiffs' Reply neglects
18  to even acknowledge the risks associated with exposing voter choices to the Internet. Instead,
19  Plaintiffs mischaracterize the Secretary's public interest arguments as merely "that the requested
20  changes would be too 'complex' to implement[,]" *id.* at 15, which ignores the Secretary's clearly
21  expressed concerns about "the threat of data manipulation" and both actual "election integrity"
22  and "public confidence in the election's results." *See* Opp'n at 24–25.

23  It bears emphasizing: Plaintiffs do not appear to deny that they are seeking an unregulated
24  introduction of Internet voting for voters with print disabilities. *See, e.g.*, Reply at 3 (emphasizing
25  that e-fax would not "require a lengthy and expensive new certification process"). But that
26  request necessarily asks the Court to impose a completely unexamined and untested method of
27  Internet ballot collection across the entire state in the less than four months remaining between
28  the hearing on Plaintiffs' motion and the date mail ballots are sent to voters. Plaintiffs view that

as a "facially reasonable" accommodation, *id.* at 10, but it is not. In sum, Plaintiffs' Reply does nothing to undermine the substantial likelihood that the Secretary will prevail on the merits of her fundamental alteration defense.

> D. **Plaintiffs' reply evidence does not alleviate the Secretary's implementation concerns in view of the imminent general election.**

Plaintiffs assert that the Secretary's "argument that County election officials would not have time to implement Plaintiffs' requested relief ahead of the November election is wrong as a matter of fact and law[.]" Reply at 12. But even on this administrative point, Plaintiffs' reply evidence is not compelling.

As a primary example, just *one* county declaration says anything about implementing e-fax. *See* Tuteur Decl. ¶ 9; *cf.* ECF Nos. 41-8–41-11. Plaintiffs' only other declaration that has any substantive discussion of e-fax doesn't describe how it works on the receiving end—*i.e.*, the county end—and doesn't establish that the voter's ballot was actually transmitted to San Mateo County by e-fax. *See* Smith Decl. ¶ 6. Viewed in its most favorable light, Plaintiffs' evidence does not change the fact that they are asking for significant changes that will impact each of California's fifty-eight counties in different ways with fewer than four months to go before counties must begin sending mail ballots to voters.

Indeed, Plaintiffs' declarations from five California counties are primarily remarkable for what they omit. Los Angeles County, for example, states that it "has the capability to utilize the identical fax ballot return option for voters with print disabilities should this Court order the fax return option to be available to voters with print disabilities." Logan Decl., ECF No. 41-9, ¶ 7. But nowhere does its declaration purport to establish that Los Angeles County could easily implement *e-fax* ballot collection—all Los Angeles says on that score is that it cannot determine whether a fax it receives was sent as an e-fax or through traditional fax. *See id.* ¶ 8. Likewise, San Benito County—which received *no* RAVBM paper cast vote records and only eight faxed ballots in the March 2024 presidential primary elections—is at pains to say in its declaration that expansion of the *current* fax return procedure would be acceptable only if it "would not require the Election Department to purchase new equipment[.]" *See* Diaz Decl., ECF No. 41-11, ¶¶ 4–6.

1  Would San Benito County need to purchase new equipment to implement *e-fax*? Plaintiffs'
2  declaration does not say.
3        Similarly, Los Angeles County states that expanding fax return to voters with print
4  disabilities "would not place an additional burden" on the county since it already "process[es]
5  faxed ballots[.]" Logan Decl. ¶ 7. But that statement is missing context: surely, there is some
6  number of additional faxed ballots that would pose a burden since Los Angeles County must
7  duplicate each faxed paper cast vote record onto an official ballot after receipt. How many would
8  be too many? Los Angeles County doesn't say. How many additional ballots would Los Angeles
9  County expect to receive by fax if the Court granted Plaintiffs' requested relief? Again, Los
10 Angeles County's declaration is silent. Indeed, Plaintiffs have *never* told the Court even
11 approximately how many additional ballots would be e-faxed to counties throughout California if
12 the Court granted their motion. Yet, Plaintiffs expect the Court to simply order that relief in the
13 absence of any information establishing the actual burden it might pose. These same problems are
14 apparent in the (nearly identical) declarations Plaintiffs submit from Riverside County, ECF No.
15 41-10, San Benito County, ECF No. 41-11, and Contra Costa County, ECF No. 41-8.
16       Because these county declarations do not specifically discuss e-fax technology, they also
17 omit any discussion of the potential security concerns associated with exposing voter choices to
18 the Internet. Neither the Secretary nor the Court can know what these county declarants might say
19 about implementing the system Plaintiffs *actually* ask the Court to impose statewide, but at least
20 two California counties have serious misgivings about collecting marked ballots over the Internet.
21 *See* Declaration of Lupe Villa ("Villa Decl."), ¶¶ 4–5; Declaration of Tricia Webber ("Webber
22 Decl."), ¶¶ 4–5. And, at least some of the counties have similar concerns about their ability to
23 securely implement an e-fax return procedure in advance of the November 2024 general election.
24 *See* Villa Decl. ¶5.
25       Plaintiffs tell the Court that "[e]lections officials from counties across California . . . have
26 confirmed, under oath, that they would be able to implement Plaintiffs' requested relief in time
27 for the November election." Reply at 13. But of the five county registrar declarations Plaintiffs
28 filed, *only one* says anything about implementing e-fax, which Plaintiffs have made clear

1  constitutes a fundamental aspect of their requested relief. *See* EFC Nos. 41-2, 41-8–41-11. One
2  declaration does not establish that elections officials "from counties across California" would be
3  able to implement e-fax return "in time for the November election." Reply at 13. And even if each
4  of Plaintiffs' declarations did say something about e-fax—which they do not—that that would
5  provide the Court with the limited perspective of a handful of California's counties. Clearly, other
6  county elections officials do not share Plaintiffs' benign view of e-fax or digital signatures. Villa
7  Decl. ¶¶ 4–8; Webber Decl. ¶¶ 4–8.

8       In sum, Plaintiffs' evidence does nothing to dispel the Secretary's legitimate invocation of
9  the principle of federal judicial non-interference in the state's administration of an imminent
10 election. Federal decisional authority "recognizes that election cases are different from ordinary
11 injunction cases[,]" and that "[i]nterference with impending elections is extraordinary[.]" *Sw.*
12 *Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (en banc) (per
13 curiam) ("*Southwest Voter*"). In particular, the Supreme Court has recognized that "[r]unning
14 elections state-wide is extraordinarily complicated and difficult." *Merrill v. Milligan*, 142 S. Ct.
15 879, 880 (2022) (granting stay) (Kavanaugh, J., concurring).

16      As the Secretary has already explained, Plaintiffs' requested relief amounts to a
17 fundamental alteration of the State's vote-by-mail program. The hearing on Plaintiffs' motion is
18 now set to occur less than four months before counties must begin mailing ballots to voters on
19 October 7, 2024. Even if the Court issues its ruling quickly, a decision is likely to come very
20 close in time to the start of the vote-by-mail program. In a similar case in Indiana where the
21 plaintiffs asked for an order "to implement an RAVBM program," a federal district court
22 concluded that two months was "too close in time to the election[] to be permissible[.]" *See Am.*
23 *Council of the Blind of Ind.*, 2022 WL 702257, at *6; *see also* ECF No. 47 (setting hearing date
24 for June 17, 2024). As the Secretary's declarants explained in support of her Opposition,
25 implementing new voting procedures requires outreach, updates to voter information, planning,
26 and a number of other logistical challenges. *See* Robinson Decl., ECF No. 37, ¶¶ 35–41. Plaintiffs
27 urge the Court to ignore this practical reality, once again erroneously contending that their
28 requested relief is already authorized under the Elections Code. *See* Reply at 14–15. But the fact

remains: Plaintiffs delayed bringing this lawsuit until the eleventh hour and now seek to establish a brand new method of ballot collection for a specific set of voters in a matter of mere months, which has the strong potential to sow confusion among both voters and the counties, and to disrupt the orderly conduct of the 2024 general election. This is particularly true in light of the dearth of evidence Plaintiffs have presented on the *actual implementation* of their requested relief.

### E. Plaintiffs' evidence *does* clearly demonstrate that the Secretary cannot redress their injuries.

Plaintiffs appear to rely exclusively on the Secretary's responsibility to certify RAVBM systems in their response to the Secretary's challenge to their Article III standing for lack of redressability. *See* Reply at 3. They contend that this certification responsibility also means she has the statutory authority to order counties to accept ballots by e-fax. *Id.*

That argument fundamentally misses the point. As Plaintiffs quickly go on to acknowledge, e-fax ballot return (or even traditional fax ballot return) is *not a component* of an RAVBM system as defined under current California law. *See id.*, *see also* Cal. Elec. Code § 303.3 (defining RAVBM system). This has a clear logical consequence: the Secretary's RAVBM certification authority *cannot* provide the basis for Plaintiffs' contention that their injuries are redressable by the Secretary because that authority provides no basis to "certify" e-fax ballot return; stated differently, any such "certification" on the Secretary's behalf would be *ultra vires*. *See id.*; *see also M.S. v. Brown*, 902 F.3d 1076, 1084 (9th Cir. 2018) (holding that, where a state official lacks "the statutory authority" to grant a plaintiff's requested relief, the plaintiff has "failed to establish redressability.").

It is true that, where the Elections Code charges the Secretary with certifying a "component" of the State's "electoral machinery," the counties "are free to choose among certified systems[.]" Opp'n at 4. But, the Elections Code only authorizes the Secretary to certify some aspects of the State's election systems, like voting systems and RAVBMs. There are numerous aspects of the State's election system that the Secretary does not certify, like facsimile ballot return or the U.S. Mail. In those circumstances, the Elections Code itself provides the

1   substantive requirements. Plaintiffs' requested relief, however, is *nowhere authorized* by the
2   Elections Code, either as a component the Secretary may certify or as a free-standing element
3   authorized by the Code itself.

4       Moreover, Plaintiffs' own choice to obtain declarations from five different counties to
5   explain how each of them administer the UOCAVA portions of the vote-by-mail system merely
6   underscores that the Secretary cannot redress Plaintiffs' injuries. Plaintiffs do not dispute that the
7   responsibility for accepting vote-by-mail ballots rests with local county elections officials. *See,*
8   *e.g.*, Reply at 4–5. And county testimony shows some variability in those processes. One county
9   apparently has e-fax capabilities, Tuteur Decl. ¶ 8; another avers it has no ability to determine
10  whether a ballot is e-faxed or not, Logan Decl. ¶ 8; still others declare that they do not accept e-
11  fax under any circumstances. Villa Decl. ¶ 4; Webber Decl. ¶ 4. If the Court wanted to ensure that
12  every county accepts e-faxed ballots for the November general election—the relief Plaintiffs say
13  they need, *see, e.g.*, Reply at 15 ("Plaintiffs respectfully request that the Court grant [the]
14  requested preliminary injunctive relief Plaintiffs seek—the ability to return their RAVBM ballots
15  by electronic fax accompanied by an electronic signature")—there is only one way to ensure that
16  outcome: an injunction binding each of the counties. Because Plaintiffs decided not to name them
17  as defendants, the Court has heard only from a limited cross section of elections officials and
18  Plaintiffs have not disputed that the Court has no authority to bind any of them through a
19  preliminary injunction. *See* Fed. R. Civ. P. 65(d)(2). Instead, Plaintiffs merely suggest that county
20  non-compliance with the Court's order "would be a separate suit." Reply at 3. That concession is
21  all the Court needs to conclude that it *cannot* provide complete relief to Plaintiffs through *this*
22  suit.

23  **III.  CONCLUSION**

24      This Court lacks jurisdiction over Plaintiffs' lawsuit because it is California's fifty-eight
25  counties, not the Secretary of State, who can redress Plaintiffs' claimed injuries. But even if the
26  Court did have jurisdiction, Plaintiffs' Reply does not support the injunction they seek.
27      Primarily, their reply evidence is aimed at convincing the Court that the Elections Code
28  means something other than what it says. Ordinary rules of statutory construction together with a

1  straightforward reading of the text and its legislative history preclude that conclusion. To the
2  extent Plaintiffs' evidence is offered to show that implementing their requested relief—which is
3  not currently authorized by law—would be straightforward, it proves less than Plaintiffs contend.
4  Just one county claims it currently has e-fax capabilities and several others have serious concerns
5  about that technology. Even considering Plaintiffs' belatedly-constructed record, there is no basis
6  to impose Plaintiffs' requested fundamental alteration to California's vote-by-mail program in the
7  handful of months remaining before counties must begin mailing ballots. Plaintiffs' motion for a
8  preliminary injunction should be denied.

Dated:  May 28, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK E. BECKINGTON
Supervising Deputy Attorney General
JANE E. REILLEY
Deputy Attorney General


*/s/ Nicholas R. Green*
NICHOLAS R. GREEN
Deputy Attorney General
*Attorneys for Defendant*
*Office of Secretary of State*

DEFENDANT'S SUR-REPLY IN SUPPORT OF
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (3:24-cv-01447-SK)

# CERTIFICATE OF SERVICE

Case Name: *California Council of the Blind, et al. v. Shirley N. Weber*
Case No.   **3:24-cv-01447-SK**

I hereby certify that on May 28, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT'S SUR-REPLY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**
- **DECLARATION OF LUPE VILLA**
- **DECLARATION OF TRICIA WEBBER**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on May 28, 2024, at San Francisco, California.

G. Pang
Declarant

Signature

SA2024301128/44180827.docx