United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CALIFORNIA COUNCIL OF THE BLIND, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>SHIRLEY N. WEBER,<br><br>　　　　　Defendant. | Case No. 24-cv-01447-SK<br><br>**ORDER ON MOTION FOR PRELIMINARY INJUNCTION**<br><br>Regarding Docket No. 12 |

　　　　This matter comes before the Court upon consideration of the motion for a preliminary injunction filed by Plaintiffs Christopher Gray, Vita Zavoli, Russell Rawlings, California Council of the Blind, and National Federation of the Blind of California (collectively, "Plaintiffs"). Having carefully considered the parties' papers, relevant legal authority, the record in the case, and having had the benefit of oral argument, the Court hereby DENIES Plaintiffs' motion for the reasons set forth below.[1]

## BACKGROUND

　　　　Plaintiffs are individuals with "print disabilities" and an organization that represents individuals with print disabilities. Plaintiffs explain that a print disability is a disability that prevents a voter from reading, marking, holding, handling, and/or manipulating a paper ballot. (Dkt. No. 12 (Mot.) at p. 2 n. 1.) Individuals with print disabilities are currently able to receive, read, and mark their ballots independently using their respective counties' remote accessible vote-by-mail ("RAVBM") system. Although they can receive, read, and mark their ballots privately and independently, there is no option in California for them to return their ballots privately and

---

[1] The Court GRANTS Plaintiffs' request for judicial notice pursuant to Federal Rule of Evidence 201. (Dkt. No. 42.)

1    independently.

2    **A.      Voting Remotely.**

3           Currently all California residents who are registered to vote are mailed a ballot.  *See* Cal.

4    Elec. Code § 3003 ("The vote by mail ballot shall be available to any registered voter.").  Election

5    officials are required to begin mailing ballots to all registered voters at least 29 days before an

6    election.  *See* Cal. Elec. Code §§ 3000.5, 3001.  Registered voters are mailed a ballot for the

7    precinct in which they reside and all supplies necessary for the use and return of the ballot,

8    including an identification envelope.  *See* Cal. Elec. Code § 3010.  The identification envelopes

9    are required to contain a declaration under penalty of perjury attesting that the voter resides in the

10   precinct in which they are voting and that they are the person whose name is on the envelope.  The

11   envelopes are further required to contain the signature and address of the voter, as well as the

12   name and signature of the person authorized by the voter to return the vote by mail ballot.  *See*

13   Cal. Elec. Code § 3011.

14          After marking a vote by mail ballot, a voter must do one of the following : (1) "[r]eturn the

15   ballot by mail or in person to the elections official who issued the ballot"; (2) "[r]eturn the ballot

16   in person to a member of a precinct board at a polling place or vote center within the state", or (3)

17   "[r]eturn the ballot to a vote by mail ballot dropoff location within the state".  *See* Cal. Elec. Code

18   § 3017(a)(1).  Alternatively, "a vote by mail voter who is unable to return the ballot may designate

19   another person to return the ballot to the elections official who issued the ballot, to the precinct

20   board at a polling place or vote center within the state, or to a vote by mail ballot dropoff location

21   within the state[.]"  *See* Cal. Elec. Code § 3017(a)(2).

22          Upon receipt of the vote by mail, the elections official is required to compare the signature

23   on the identification envelope with the signature on the voters' registration affidavit or other

24   elections official form that is part of the voter's registration record.  *See* Cal. Elec. Code §

25   3019(a)(1).  A signature made with a mark or signature block shall be presumed valid if the

26   signature meets the requirements of California Elections Code § 354.5.  *Id.*  California Elections

27   Code § 354.5 in turn provides that a signature includes "[a] person's mark if the name of the

28   person affixing the mark is written near the mark by a witness over 18 years of age designated by

United States District Court
Northern District of California

United States District Court
Northern District of California

the person and the designee subscribes his or her own name as a witness thereto" and "[a]n *impression* made by the use of a signature stamp pursuant to the requirements specified in subdivision (c)."  *See* Cal. Elec. Code § 354.5(a) (emphasis added).  Subdivision (c) specifies the conditions for using a signature stamp, including that the signature stamp be affixed on the identification envelope by an authorized user of the stamp.  Cal. Elec. Code § 354.5(c).  An authorized user is defined to include a person "with a disability who, by reason of that disability, is unable to write and who owns a signature stamp" or "using the signature stamp on behalf of the owner of the stamp with the owner's express consent and in the presence of the owner."  Cal. Elec. Code § 354.5(f)(1).  A signature stamp is further defined as "a stamp that contains the *impression* of" either "[t]he actual signature of a person with a disability", "[a] mark or symbol that is adopted by the person with a disability", or "[a] signature of the name a person with a disability that is made by another person and is adopted by the person with the disability."  Cal. Elec. Code § 354.5(f)(3) (emphasis added).  The statute further provides that the voter who qualifies as an authorized user may not use the stamp until after he or she first submits an affidavit by "[u]sing the signature stamp to sign the affidavit in the presence of a county elections official" or submitting an affidavit "that utilizes a signature stamp that has been approved by the Department of Motor Vehicles and transmitted to the Secretary of State."  Cal. Elec. Code § 354.5(e).

If the signatures do not match, an elections official must send the voter a notice of the mismatched signatures and instructions that the voter may submit a signature verification statement.  The statute provides that the signature verification statement may be mailed, delivered, or submitted by "by email or facsimile transmission to your local elections official, or by other electronic means made available by your local elections official, or submit your completed statement to a polling place within the county or a ballot dropoff box before the close of the polls on election day."  *See* Cal. Elec. Code § 3019(d)(2); *see also* Cal. Elec. Code § 3019(d)(4) (specifying that a voter may deliver their signature verification statement "in person, by mail, by fax, by email, or other means").

### 1.     Voting Systems.

A "voting system" is defined as "a mechanical, electromechanical, or electronic system

and its software, or any combination of these used for casting a ballot, tabulating votes, or both. *See* Cal. Elec. Code § 362.  The Legislature specifies its intent that "[a]ll voting systems be certified or conditionally approved by the Secretary of State, independent of voluntary federal qualification or certification, before they are used in future elections to ensure that the voting systems have the ability to meet accuracy, accessibility, and security standards."  *See* Cal. Elec. Code § 19006(a).  The California Elections Code directs the Secretary to "study and adopt regulations governing the use of voting machines, voting devices, vote tabulating devices, and ballot marking systems" and to be "responsible for certifying voting systems for use in" California.  *See* Cal. Elec. Code § 19100.  More specifically, the Secretary is directed to ensure that voting systems preserve the secrecy of ballots, are "safe from fraud or manipulation[,]" and are accessible to voters with disabilities.  *See* Cal. Elec. Code § 19101(b).

A voting system may not be used "unless it has been certified or conditionally approved by the Secretary of State prior to any election at which it is to be used."  *See* Cal. Elec. Code § 19202(a).  A voting system may not: (1) "be connected to the Internet at any time"; (2) "electronically receive or transmit election data through an exterior communication network, including the public telephone system, if the communication originates from or terminates at a polling place, satellite location, or counting center"; or (3) "receive or transmit wireless communications or wireless data transfers."  *See* Cal. Elec. Code § 19205.  Prior to certifying, conditionally approving, or withholding certification of a voting system, or any part of a voting system, the Secretary must "provide for a 30-day public review period and conduct a public hearing to give persons interested an opportunity to review testing and examination reports and express their views for or against certification or conditional approval of the voting system."  *See* Cal. Elec. Code § 19211(a).  Moreover, the Secretary must provide notice of the public review period and hearing at least 14 days before the public review period begins.  *See* Cal. Elec. Code § 19211(b).

### 2.    RAVBM

A RAVBM is defined as "a mechanical, electromechanical, or electronic system and its software that is used for the sole purpose of marking an electronic vote by mail ballot for a voter

who shall print the paper cast vote record to be submitted to the elections official." *See* Cal. Elec. Code § 303.3.  The statute further provides that a RAVMB "system shall not be connected to a voting system at any time." *Id*.  Moreover, a RAVBM system is prohibited from having the capability to use a remote server to mark a voter's selections, to store any voter identifiable selections on a remote server, or to tabulate votes.  *See* Cal. Elec. Code § 19295.

A RAVBM cannot be used for an election until the Secretary certifies or conditionally approves it.  *See* Cal. Elec. Code § 19281(a).  The Secretary cannot certify or conditionally approve a RAVBM system, or part of a RAVBM unless it fulfills the statutory requirements and the Secretary's regulations.  *See* Cal. Elec. Code § 19280.  Moreover, the Secretary is directed to ensure any RAVBM system certified or approved preserves the secrecy of the ballot and the RAVBM system and is safe from fraud or manipulation.  *See* Cal. Elec. Code § 19283(b).

Similar to the requirements for certifying or conditionally approving a RAVBM system, the Secretary must provide a 30-day public review period and conduct a public hearing "to give interested persons an opportunity to review testing and examination reports and express their views for or against certification or conditional approval" and provide notice of the public review period and hearing at least 14 days before the public review period begins.  *See* Cal. Elec. Code § 19287.

In addition, although no party points to any statute or regulation, both sides appear to agree that people who mark a paper cast ballot through a RAVBM system and print a copy of the paper ballot must submit an attestation that informs the RAVBM voters that their voting selections will be transferred onto a ballot by their local county elections official to be tabulated.  (Dkt. No. 37 (Declaration of NaKesha Robinson), ¶ 25, Ex. C.)[2]

### 3.    Qualified Military and Overseas Voters.

The California Elections Code provides special procedures for military and overseas voters.  A military or overseas voter is defined as

---

[2] While the Secretary does not point to statutory language in support of this statement, this appears to be an uncontested factual matter.  (Dkt. No. 41 (Reply) at p. 6 ("As Defendant concedes, all RAVBM ballots . . . are transcribed onto official ballots by County elections officials, and it is that transcribed official ballot that is then tabulated by the voting system.").)

United States District Court
Northern District of California

means an elector absent from the county in which he or she is otherwise eligible to vote who is any of the following:

(1) A member of the active or reserve components of the United States Army, Navy, Air Force, Marine Corps, or Coast Guard; a Merchant Marine; a member of the United States Public Health Service Commissioned Corps; a member of the National Oceanic and Atmospheric Administration Commissioned Corps of the United States; or a member on activated status of the National Guard or state militia.

(2) A citizen of the United States living outside of the territorial limits of the United States or the District of Columbia.

(3) A spouse or dependent of a person described in paragraph (1).

*See* Cal. Elec. Code § 300(b) ("qualified military or overseas voter").  Elections official for each district are required to ensure that their jurisdiction has a system to allow qualified military or overseas voters "to electronically request a ballot".  *See* Cal. Elec. Code § 3101(c).  Additionally, the Secretary is required to "prescribe the form and content of a declaration for use by a military or overseas voter to swear or affirm specific representations pertaining to the voter's identity, eligibility to vote, and status as a military or overseas voter, and shall further prescribe requirements for the timely and proper completion of a military or overseas voter's ballot."  *See* Cal. Elec. Code § 3101(e).  Even if already registered to vote in their county, a qualified military or overseas voter must still complete a voter registration application, either online or through a postcard, in order to participate in this process.  *See* https://www.sos.ca.gov/elections/voter-registration/military-overseas-voters.  A qualified military or overseas voter "may, by facsimile transmission, register to vote and apply for a ballot . . . or a vote by mail ballot."  *See* Cal. Elec. Code § 3105(f).  Moreover, if requested, elections officials "shall send the ballot to the qualified military or overseas voter either by mail, facsimile, or electronic transmission, as requested by the voter."  *Id*.  Qualified military or overseas voters are then authorized to "return their ballot by facsimile transmission."  *See* Cal. Elec. Code § 3106(a).  In addition, this statute requires qualified military and oversea voters to sign an oath under penalty of perjury that they waive their right to have their ballot kept secret.  *Id*.  The statute further provides that "[n]otwithstanding the voter's waiver of the right to a secret ballot, each elections official shall adopt appropriate procedures to protect the secrecy of ballots returned by facsimile transmission."  *See* Cal. Elec. Code § 3106(b).

Moreover, despite the permission to return their ballots by facsimile, the statute encourages the qualified military and overseas voters "to return their ballot by mail or in person if possible.  A qualified military or overseas voter should return a ballot by facsimile transmission only if doing so is necessary for the ballot to be received before the close of polls on election day."  *See* Cal. Elec. Code § 3106(d).

Qualified Military and overseas voters are also permitted to cast their ballots using a certified RAVBM system.  *See* Cal. Elec. Code § 3116.5.

**B.     The Secretary's Powers Regarding Elections.**

The Secretary is identified as the chief elections officer of California and is provided the "powers and duties specified in the [California Elections Code] and Section 12172.5 of the Government Code."  *See* Cal. Elec. Code § 10.  Section 12172.5 of the Government Code provides that the Secretary shall administer the provisions of the California Elections Code, see that elections are efficiently conducted, and that state election laws are enforced.  *See* Cal. Gov't. Code § 12172.5(a).  If the Secretary concludes that the election laws are not being enforced, the Secretary is directed to call the violation to the attention of the county district attorney or state Attorney General.  *See* Cal. Gov't. Code § 12172.5(b).  Lastly, the Government Code provision authorizes the Secretary to "adopt regulations to ensure the uniform application and administration of state election laws."  *See* Cal. Gov't. Code § 12172.5(d).

Moreover, as noted above, the Secretary is also charged with certifying voting systems and the RAVBM systems.  *See* Cal. Elec. Code. §§ 19202, 19281.

**C.     Plaintiffs' Concerns and Requested Relief.**

Individuals with print disabilities are currently able to receive, read, and mark their ballots independently using their respective counties' RAVBM system.  However, although they can receive, read, and mark their ballots privately and independently, there is no option in California for them to return their ballots privately and independently.  Instead, due the requirement to print, manually sign, and physically return their ballots in an envelope by mail, in person to an election official, or at a designated ballot drop-off location, people with print disabilities must rely on another person to assist them in returning their ballots.

United States District Court
Northern District of California

7

1    In addition, as noted above, persons who mark a ballot through a RAVBM system and

2    print a copy of the paper ballot must submit an attestation that informs the RAVBM voters that

3    their voting selections will be transferred onto a ballot by their local county elections official to be

4    tabulated.  (Dkt. No. 37, ¶ 25, Ex. C.)

5    Plaintiffs contend that the California Elections Code currently authorizes qualified military

6    and overseas voters to return their ballots through *electronic* facsimile (also known as "e-fax").

7    Plaintiffs seek the ability to return their ballots through an *electronic* facsimile.  Moreover,

8    Plaintiffs want the ability to sign their ballots *electronically*.  (Dkt. No. 12 at p. 3 ("California

9    must provide voters with print disabilities with an accessible electronic method for returning their

10   vote-by-mail ballots ('e-return').")), p. 4 n. 3 ("This motion requests a fax-based e-return option . .

11   ."), p. 10 n. 22 (discussing electronic signatures), p. 19 ("e-return mechanism that Plaintiffs ask for

12   here"); *see also* Dkt. No. 41 (Reply) at p. 1 ("The preliminary injunctive relief Plaintiffs seek – the

13   ability to return their "remote accessible vote-by-mail" (RAVBM) ballots by electronic fax,

14   accompanied by an electronic signature"), p. 2 ("Plaintiffs' requested relief . . . would just require

15   that the ballot generated by a separate RAVBM system be returnable by electronic fax."), p. 5

16   ("Plaintiffs' requested relief – the ability to return RAVBM ballots by electronic fax, accompanied

17   by an electronic signature".).)

18   Plaintiffs acknowledge that the method they request (which is allegedly the same as the

19   one used by qualified military and overseas voters for returning ballots) would require them to

20   waive their right to a secret ballot and would require elections officials to duplicate their returned

21   ballot.  However, they strongly prefer allowing an anonymous election official, who is held to

22   high standards of privacy and commitment to keeping election data private, over allowing people

23   they know personally to assist them to return their ballots because those people can view the votes

24   cast by Plaintiffs.  (Dkt. No. 41-5 (Supplemental Declaration of Vita Zavoli) at ¶¶ 2, 3, 4, 5; Dkt.

25   No. 41-6 (Supplemental Declaration of Russel Rawlings) at ¶¶ 2, 3, 4; Dkt. No. 41-5

26   (Supplemental Declaration of Christopher Gray) at ¶¶ 2, 3, 4, 5.)  Plaintiffs contend that the

27   current RAVBM system, thus, infringes more on their ability to vote secretly than the method they

28   propose – the method used by qualified military and overseas voters to return their ballots.  (*Id.*)

United States District Court
Northern District of California

8

Plaintiffs seek an order requiring Defendant California Secretary of State Shirley N. Weber ("Secretary" or "Defendant"):

> to immediately make available to voters with print disabilities, in an accessible manner and in time for use in the November 5, 2024, presidential general election, facsimile-based ballot return procedures substantially similar to those currently available to and used by certain military and overseas voters in elections administered by California elections officials.

Dkt. No. 12 (Mot.) at p. 1.)  Additionally, Plaintiffs seek to require the Secretary to, in time for the November general election:

> 1.    Establish accessible procedures that voters with print disabilities can use to attest that they have a print disability and therefore are eligible to use the fax-based ballot return procedures; and

> 2.    Establish accessible procedures that voters with print disabilities can use to complete and sign, with an electronic signature, an "oath of voter declaration" form that is substantially similar to the one that certain military and overseas voters must fax with their ballot pursuant to California Elections Code section 3106(a).

(*Id.*)

## ANALYSIS

### A.      Applicable Legal Standards.

A plaintiff seeking a preliminary injunction must demonstrate: (1) likely success on the merits; (2) likely irreparable harm absent preliminary relief; (3) that the balance of equities tips in Plaintiffs' favor; and (4) that an injunction is in the public's interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A "possibility" of irreparable harm is insufficient; rather it must be "likely" absent an injunction.  *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009).  Alternatively, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Plaintiffs bear the burden to show that these factors are met.  *DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

When evaluating a preliminary injunction motion, the court may consider otherwise

inadmissible evidence. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept this hearsay for purposes of deciding whether to issue the preliminary injunction.").

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. An injunction may take two forms. First, "[a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal quotation marks and alteration omitted). Second, a mandatory injunction orders a party to take action. *Id.* at 879. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (citing *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979)). Moreover, because Plaintiffs seek a mandatory injunction, they "must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting plaintiff's burden was "doubly demanding" because she was seeking a mandatory injunction). Mandatory injunctions go "well beyond simply maintaining the status quo *pendente lite* [and are] particularly disfavored." *Id.*

## B.     Plaintiffs' Motion for a Preliminary Injunction.

This motion raises serious concerns from both sides. On the one hand, Plaintiffs argue that they have been denied equal access to vote because the current methods for voting require them to use the assistance of another person to return their ballots, and that other person is thus able to see Plaintiffs' choices in voting. This system "interferes" with a "fundamental electoral" right. *Nabors v. Manglona*, 829 F.2d 902, 905 (9th Cir. 1987); *see also California Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1238 (N.D. Cal. 2013) ("one of the central features of

1    voting, and one of its benefits, is voting privately and independently").  On the other hand,

2    Plaintiffs are requesting a mandatory injunction concerning an election occurring in four months

3    (and just over three months from when the vote-by-mail materials must be mailed to voters).[3]

4    Mandatory injunctions are highly disfavored, and the fact that this request for a mandatory

5    injunction concerns an election in a few months requires additional restraint and caution by the

6    Court.

7            The Court begins with the first factor under the *Winter* test – likely success on the merits –

8    because it is the most important factor.  *Garcia*, 786 F.3d at 740.  If Plaintiffs fail to make the

9    requisite showing of likely success, the Court need not consider the remaining factors.  *Id*.

10   Moreover, as noted above, because Plaintiffs seek a mandatory injunction, they "must establish

11   that the law and facts *clearly favor* [their] position."  *Id*.

12           Plaintiffs seek to require the Secretary to make returns by electronic facsimile an option for

13   returning ballots for this upcoming general election on November 5, 2024.  Traditional facsimiles,

14   which use telephone lines to transmit, differ from electronic facsimiles, which are sent

15   electronically over the internet.  *See Lyngaas v. Curaden Ag*, 992 F.3d 412, 426 (6th Cir. 2021)

16   (defining "traditional fax machines" as ones that "automatically print a fax received over a

17   telephone line").

18           **1.      Standing – Redressability.**

19           Defendant explains that the Secretary does not have the authority to issue any such

20   requirement, and Plaintiffs do not substantively address that argument.  This is a threshold issue

21   that the Court must address first.  *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560-61 (1992)

22   (standing under Article III requires a plaintiff to have an injury in fact that is (1) concrete and

23   particularized, (2) traceable to the defendant, and (3) redressable by judicial order)*; see also M.S.*

24   *v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("[E]even where a plaintiff requests relief that

25   would redress her claimed injury, there is no redressability if a federal court lacks the power to

26   issue such relief."); *Nat'l Fed. of the Blind of Ala. v. Allen*, 661 F. Supp. 3d 1114, 1122-23 (N.D.

27   _____

28   [3] Materials for voting by mail must be mailed out to voters at least 29 days before the
     election.  *See* Cal. Elec. Code § 3000.5.

United States District Court
Northern District of California

1   Ala. 2023) (finding no standing where Secretary's statutorily defined authority did not include

2   providing the relief sought).

3           The Secretary's authority with respect to elections is specifically delineated, and the scope

4   of voter systems and RAVBM systems are specifically described.  Pursuant to provisions of the

5   California Elections Code and California Government Code § 12172.5, the California legislature

6   has provided the Secretary with enumerated powers over several aspects of state elections.  As the

7   chief elections officer, the Secretary is charged administering the provisions of the elections code

8   and seeing "that elections are efficiently conducted and that state election laws are enforced."  Cal.

9   Elec. Code. §10; Cal. Gov't Code § 12172.5.  The Secretary is also charged with *certifying* voting

10  systems and the RAVBM system.  *See* Cal. Elec. Code. §§ 19202, 19281.  Neither Plaintiffs nor

11  the Secretary has pointed to any other election code provisions, or any other source of authority,

12  that delegate powers to the Secretary concerning elections and voting.  The parties agree that the

13  Secretary does not have the power to order counties to adopt a specific system as proposed by

14  Plaintiffs; rather, the Secretary can certify the system proposed by Plaintiffs so that individual

15  counties can choose among certified systems.  Section 10 of the Election Code and Section

16  12172.5 of the Government Code do not provide the Secretary with the power to enact the relief

17  Plaintiffs seek.

18          Here, Plaintiffs do not point to a specific California Elections Code provision they seek to

19  enforce.  Instead, they are seeking to enforce a federal law – the ADA – over state law.  Plaintiffs

20  also point out, and the Secretary does not dispute, that federal law can override a state law that

21  does not comply.

22          Next, the Court turns to the Secretary's power to certify voting systems and the RAVBM

23  system.  As noted above, a "voting system" is defined as "a mechanical, electromechanical, or

24  electronic system and its software, or any combination of these used for casting a ballot, tabulating

25  votes, or both, and voting systems may not be connected to the internet at any time.  *See* Cal. Elec.

26  Code §§ 362, 19205.  Plaintiffs argue that the relief they seek is not part of a voting system

27  because they only seek to return paper ballots through electronic facsimile.  Because their paper

28  ballots would need to be transcribed by an election official onto an official ballot before the

United States District Court
Northern District of California

voters' selections may be entered into the system or *cast*, Plaintiffs argue that the mere step of *returning* a paper ballot is separate and distinct from a voting system.  Therefore, the Secretary's authority to certify a voting system does not include authority to provide Plaintiffs' requested relief.

Plaintiffs' arguments with respect to an RAVBM are confusing.  They argue that they are not seeking a new RAVBM system and, thus, there would be no need for any RAVBM certification or approval process.  (Dkt. No. 41 (Reply) at p. 1 n. 1.)  Yet, confusingly, they also argue that they are seeking a "RAVBM ballot-return option."  (*Id*. at p. 1; *see also* p. 2-3 (arguing that the Secretary's authority to certify RAVBM systems provides her authority to provide Plaintiff their requested relief.)  Their argument appears to be that qualified military and overseas voters are currently allowed to return their ballots through electronic facsimiles, and Plaintiffs merely want that option extended to them.  However, there are two problems with this argument.

First, the Secretary argues, and the Court agrees, that California Elections Code § 3016 which currently authorizes qualified military and overseas voters to return their ballots by facsimile does not include authorization to sign electronically or to return ballots electronically. *See* Cal. Elec. Code § 3106 ("A military or overseas voter who is living outside the territorial limits of the United States or the District of Columbia, or is called for military service within the United States on or after the seventh day prior to the date of the election, may return their ballot *by facsimile transmission*.") (emphasis added).[4]  In contrast, California Elections Code § 3105 provides that election officials may send (not receive) the ballots by "mail, *facsimile*, or *electronic transmission*", which clearly distinguishes between *facsimile* and *electronic* forms of transmission. *See* Cal. Elec. Code § 3105(f) (emphasis added).  In other words, the California legislature has demonstrated that it can distinguish between facsimile and electronic transmissions in providing specific language that election officials can send ballots by both facsimile and electronic means

---

[4] Plaintiffs provide evidence one of individual overseas voter who was able to return their ballot through an electronic facsimile.  However, that fact does not alter the legal analysis that the California legislature has not authorized that process.  (Dkt. No. 41-3 (Declaration of Lincoln Smith) at ¶¶ 1-7)).

United States District Court
Northern District of California

1    but that voters can return only by facsimile, without including the language about return by

2    electronic means.  Additionally, the California Elections Code sets forth detailed requirements for

3    authorizing a signature block or signature stamp and reflects that such a stamp would be a physical

4    and not an electronic one.  *See* Cal. Elec. Code § 3019(a)(1); Cal. Elec. Code § 354.5 (detailing

5    authorization procedures, including that the signature stamps make an *impression*).

6          Moreover, as the Secretary argues, allowing voters to return their ballot selections

7    electronically raises serious concerns about security.  The California Elections Code reflects the

8    legislature's concerns with security in general and in transmitting ballots or votes electronically in

9    particular.  *See* Cal. Elec. Code § 19006(a) (stating intent that the Secretary ensure security

10   standards for voting systems); Cal. Elec. Code § 19101(b) (directing Secretary to ensure that

11   voting systems preserve the secrecy of ballots, are "safe from fraud or manipulation[,]"); Cal.

12   Elec. Code § 19205 (prohibiting voting systems from being connected to the internet); Cal. Elec.

13   Code § 19283(b) (directing Secretary to ensure any RAVBM system certified or approved

14   preserves the secrecy of the ballot and the RAVBM system and is safe from fraud or

15   manipulation); Cal. Elec. Code § 19295 (prohibiting any RAVBM system from having the

16   capability to use a remote server to mark a voter's selections, store a voter's selections, or tabulate

17   votes).  The Court finds that the California Legislature has expressed a strong concern with

18   returning votes or voter's selections electronically.  Based on this record, the Court cannot find

19   that the California Elections Code presently allows qualified military and overseas voters to return

20   their ballots through *electronic* facsimiles.[5]

21          Second, the Secretary would only have authority to provide Plaintiffs' requested relief in

22   allowing them to return their ballots through facsimiles as qualified military and overseas voters

23   are allowed if Plaintiffs' requested relief would be part of a RAVBM system.  The Court notes

24   that RAVBM systems are defined as "a mechanical, electromechanical, or electronic system and

25   _____

26          [5] At the hearing, Plaintiffs tried to limit their requested injunction to *facsimiles* as opposed
     to *electronic facsimiles*.  However, Plaintiffs cannot change their motion and requested relief at
27   this late stage after the motion has been fully briefed.  Notably, Plaintiffs' opening motion and
     reply stressed the need for signing and returning their ballots *electronically,* and much of
28   Defendant's response was devoted to the lack of the Secretary's authority to provide such relief
     along with the problems with security in doing so.

14

United States District Court
Northern District of California

1    its software that is used for the sole purpose of marking an electronic vote by mail ballot for a

2    voter who shall print the paper cast vote record to be submitted to the elections official." *See* Cal.

3    Elec. Code § 303.3.  This definition is limited to electronically *marking* a ballot and thus does not

4    appear to provide authority for the Secretary to direct or allow counties to accept ballots by

5    persons with print disabilities *returned* electronically.  Additionally, the California Elections Code

6    prohibits a RAVBM system from having the capability to use a remote server to mark a voter's

7    selections, to store any voter identifiable selections on a remote server, or to tabulate votes which,

8    again, expresses a limitation on allowing a RAVBM system to connect to a server to electronically

9    return a ballot.  *See* Cal. Elec. Code § 19295.  Furthermore, the military and overseas voters'

10   voting procedures are addressed in Division 3, Chapter 2 of the Elections Code, Sections 3100

11   through 3123.  In contrast, the provisions addressing the requirements for a RAVBM are in

12   Division 19, Chapter 3.5, Sections 19280 through 19295.  Notably, the military and overseas

13   voting provisions specifically authorize qualified military and overseas voters to cast their ballots

14   by using a RAVBM.  *See* Cal. Elec. Code § 3116.5.  If the provisions addressing military and

15   overseas voters were already part of a RAVBM system, there would have been no need for this

16   statutory provision.  Finally, Section 3101 specifically describes the Secretary's duties with

17   respect to voting by qualified military and overseas voters.  *See* Cal. Elec. Code § 3101 (requiring

18   the Secretary to make information available regarding voter registration procedures and

19   procedures for casting ballots for military or overseas voters, to develop standardized military or

20   overseas voter voting materials as required by Chapter 2, to shall prescribe the form and content of

21   a declaration for use by a military or overseas voter to swear or affirm specific representations,

22   and to prescribe requirements for the timely and proper completion of a military or overseas

23   voter's ballot).  These provisions do not include anything about certifying the procedures,

24   determining who would be eligible as a military or overseas voters, or discretion to expand who

25   may use these procedures.  Therefore, the Court finds that the procedures available to qualified

26   military and overseas voters, including the ability to return ballots by facsimile, are not part of a

27   RAVBM system and that authorizing ballots to be returned electronically is statutorily precluding

28   from being part of a RAVBM system.

1       Lastly, even if allowing persons with print disabilities to use the procedures allowed by

2   qualified military and overseas voters *could* be considered as part of a RAVBM, the Secretary

3   could only *certify* a proposed change in accordance with the statutory requirements and

4   procedures.  There is no authority that Plaintiffs point to showing that the Secretary would have

5   the authority to *create* a new or *alter* an existing RAVBM system.  Accordingly, the Secretary's

6   authority to certify a RAVBM system would not provide authority to allow persons with print

7   disabilities to return their ballots by electronic facsimile.  Therefore, Plaintiffs have failed to

8   demonstrate redressability and the Court, thus, DENIES their motion for preliminary injunction.

9           **2.      Fundamental Alteration.**

10      Alternatively, assuming *arguendo* that the Secretary did have the authority to all persons

11  with print disabilities to return their ballots by facsimile, their motion suffers from additional

12  defects.  The ADA "requires only 'reasonable modifications' that would not fundamentally alter

13  the nature of the service provided."  *Tennessee v. Lane*, 541 U.S. 509, 532 (2004); *see also K.M.*

14  *ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1101 (9th Cir. 2013) (ADA "does not

15  require a public entity to take any action that it can demonstrate would result in a fundamental

16  alteration in the nature of a service, program, or activity or in undue financial and administrative

17  burdens.") (quoting 28 C.F.R. § 35.164).

18      Plaintiffs seek return their ballots *electronically* with *electronic* signatures.  As noted

19  above, the California Elections Code does not currently allow ballots to be returned through

20  *electronic* facsimiles with *electronic* signatures.  Moreover, in light of the expressed concern by

21  the legislature regarding security and fraud with voting, any such change would be a significant

22  one.  Such an important change should be thoughtfully and thoroughly considered so that the

23  security concerns could be addressed.

24      Moreover, it is unknown whether the equipment that California's 58 counties currently

25  have would be capable of receiving an electronic facsimile.  At least one county does not have a

26  facsimile machine that connects to the internet and does not use electronic facsimile for any

27  purpose.  (Dkt. No. 54-1 (Declaration of Lupe Villa, Chief Elections Offer for Kings County) at ¶

28  4.)  Also unknown is the number of persons with print disabilities who would seek to return their

United States District Court
Northern District of California

16

ballots electronically.  Although there is no evidence on the record on this point, the parties argued

vastly different possible numbers at the hearing.  Plaintiffs estimated that there are only about

30,000 eligible voters with print disabilities in California.  The Secretary, in turn, notes that there

are at least 30 million Californians in the voting age population who are blind or have serious

difficulty seeing even when using glasses.  Thus, even if just ten percent of those people are

registered voters who self-certify as a person with a print disability, three million additional voters

might seek to return their ballots by electronic facsimile if it were allowed.  If the Secretary's

calculations are correct, the number of people who would seek to vote electronically and would

need electronical ballots to be duplicated could be overwhelming to the counties' elections staff.

The Secretary notes these additional concerns with Plaintiffs' requested ballot return method:

> Changing the vote-by-mail program to allow electronic signatures would require county elections officials to collect comparison electronic signatures to keep on file, verify the legitimacy of those electronic signatures, and provide voters with an avenue to cure any potential discrepancies between their electronic signatures. . . . . Electronic signatures may also raise new and different concerns related to forgery and misuse than those implicated by handwritten signatures. . . . County elections officials would thus need to ensure that they have the infrastructure and hardware (including, but not limited to, technological devices capable of recording, comparing, and verifying electronic signatures) and training necessary to reliably verify voters' electronic signatures. . . . Each county would need to make corresponding changes to its elections website to inform voters of the new system and conduct related voter outreach. . . . Those materials would need to be translated into several languages, as required by the Elections Code.

(Dkt. No. 36 at p. 6 (citing Dkt. No. 37 at ¶ 20, 36).)  The Secretary also expressed concerns about

the threat of manipulation of data, potentially affecting both the election's integrity and the

public's confidence in the election's results.  (*Id*. at pp. 24-25.)

In addition, the system proposed by Plaintiffs would likely require more personnel, as

copying a ballot returned by facsimile onto an official ballot requires two election workers.  (Dkt.

No. 54-1 at ¶ 6.)  Given that Plaintiffs provide no information regarding the number of voters with

print disabilities who will use a new system, counties cannot prepare for the proposed system.

Because qualified military and overseas voters are required to both register in a specific county

and also separately register as a military or overseas voter, counties can prepare for those voters.

United States District Court
Northern District of California

1   Here, either voters with print disabilities would be required to register in advance or counties

2   would be required to guess as to the number of ballots would be returned under the system

3   proposed by Plaintiffs.  If prior registration were required, this would entail the creation of a

4   system to obtain those registrations, and it is unlikely that this could occur in three months.  On

5   the other hand, foregoing that second registration process would result in uncertainty, and counties

6   would not be able to determine the number of workers they would need to process those votes.

7        The Court finds that the above logistical challenges and concerns about security renders

8   Plaintiffs' requested relief, particularly in the form of a preliminary injunction only four months

9   before a general election and three months before the vote-by-mail materials would need to be

10  mailed to voters, a "fundamental alteration" of the California Elections Code.  Accordingly, the

11  Court DENIES Plaintiffs' requested injunction for this additional reason.

12       Accordingly, the Court finds that Plaintiffs fail to demonstrate the first factor under the

13  *Winter* test – success on the merits – under the requisite standard – that the law and facts clearly

14  favor their position.

15       **3.       Balance of Equities and Public Interest**

16       For the same reasons that the Court finds that Plaintiffs' proposed system is a fundamental

17  alteration of the electoral system in California, the Court finds that the balance of equities and

18  public interest do not support an injunction.   This case involves an election which will occur in

19  four months, and "election cases are different from ordinary injunction cases." *Sw. Voter*

20  *Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (citing *Reynolds v. Sims,*

21  377 U.S. 533, 585 (1964)).  "Interference with impending elections is extraordinary . . . ." *Id*.  As

22  the Supreme Court has noted:

23            state and local election officials need substantial time to plan for
             elections.   Running elections state-wide is extraordinarily
24            complicated and difficult. Those elections require enormous advance
             preparations by state and local officials, and pose significant logistical
25            challenges.

26  *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J. concurring).  As summarized by

27  another district court concerning an election two months away:

28

1

2

3

4

5

6

7

8

9

> The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing, *inter alia*, *Purcell v. Gonzalez*, 549 U.S. 1 (2006)); *see also Tully* [*v. Okeson*], 977 F.3d [608, 611-12 (7th Cir. 2020)] ("[T]he Supreme Court's *Purcell* principle counsels federal courts to exercise caution and restraint before upending state election regulations on the eve of an election."). When faced with an application for an injunction shortly before an election, courts are "required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and [their] own institutional procedures." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (noting that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls," and "[a]s an election draws closer, that risk will increase"). *See also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207, (2020) (noting that "the *Purcell* principle[ ] . . . seeks to avoid . . . judicially created confusion")

*Am. Council of Blind of Indiana v. Indiana Election Comm'n*, 2022 WL 702257, at *6 (S.D. Ind. Mar. 9, 2022) The Court must consider the fact that Plaintiffs seek relief for an election occurring within four months and require the vote-by-mail materials to be mailed out to registered voters within three months.[6] "Interference with impending elections is extraordinary . . . ." *Sw. Voter Registration Educ. Project*, 344 F.3d at 919. Moreover, as noted by the Supreme Court, "state and local election officials need substantial time to plan for elections." *Merrill*, 142 S. Ct. at 880. Because "[r]unning elections state-wide is extraordinarily complicated and difficult[,]" state and local officials "require enormous advance preparations . . . and pose significant logistical challenges." *Id*. Plaintiffs seek to distinguish this authority by arguing that the upcoming general election is not "impending" because the Secretary would have three months to prepare. However, another district court considering an injunction requesting the same relief sought by Plaintiffs for an election two months away held that based on this above precedent, the court was "powerless to enact sweeping changes to election rules or procedures . . . ." *Am. Council of Blind of Indiana*, 2022 WL 702257, at *6. This Court concurs. By seeking to return their ballots electronically with electronic signatures, Plaintiffs seek sweeping changes too close to an impending election.

---

[6] Plaintiffs concede that the Secretary would have been now and October 7, 2024 to plan and implement their requested relief. (Dkt. No. 12 at p. 23, n. 31.)

For these reasons, the balance of equities does not tip in Plaintiffs' favor, and the public interest is not served by implementing these dramatic changes in such a short period of time.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for a preliminary injunction.

**IT IS SO ORDERED**.

Dated: July 3, 2024



SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California