1  ROB BONTA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  JANE E. REILLEY
   Deputy Attorney General
4  NICHOLAS R. GREEN
   Deputy Attorney General
5  State Bar No. 323959
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102–7004
     Telephone:  (415) 510–4400
7    Fax:  (415) 703–5480
     E-mail:  Nicholas.Green@doj.ca.gov
8  *Attorneys for Defendant*
   *California Secretary of State*
9  *Shirley N. Weber, Ph.D.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CALIFORNIA COUNCIL OF THE BLIND, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**SHIRLEY N. WEBER, PH.D.,**<br><br>Defendant. | 3:24-cv-01447-SK<br><br>**DEFENDANT'S NOTICE OF MOTION & MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**<br><br>Date:       September 23, 2024<br>Time:      9:30 a.m.<br>Judge:    The Honorable Sallie Kim<br><br>Action Filed: March 8, 2024 |

**TABLE OF CONTENTS**

**Page**

Notice of Motion ................................................................................................................................ 1
Memorandum of Points & Authorities .............................................................................................. 2
    I.    Introduction ................................................................................................................ 2
    II.   Statement of the Issues Presented ............................................................................. 3
    III.  Factual Background ................................................................................................... 3
        A.   California's Elections System ........................................................................ 3
        B.   California's Vote-by-Mail System ................................................................. 4
        C.   The Elections Code Forbids Internet Voting ................................................. 6
        D.   Plaintiffs' Allegations and Requested Relief ................................................ 6
    IV.  Legal Standards ......................................................................................................... 7
    V.   Argument ................................................................................................................... 7
        A.   The Secretary does not have authority to "certify" the system Plaintiffs seek ................................................................................................. 8
        B.   Any order the Court might issue in this case will not bind the counties ........................................................................................................ 10
    VI.  Conclusion .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Semiconductor, Inc. v. Cal. Assignments LLC*
  2013 WL 5937968 (N.D. Cal. Oct. 30, 2013) .................................................................... 13

*Arizonans for Fair Elections v. Hobbs*
  454 F. Supp. 3d 910, 913-14 (D. Ariz. 2020) ................................................................ 11, 12

*Ass'n for Retarded Citizens v. Dep't of Developmental Servs.*
  38 Cal. 3d 384 (1985) ........................................................................................................... 9

*California v. Texas*
  593 U.S. 659 (2021) .............................................................................................................. 7

*Cetacean Cmty. v. Bush*
  386 F.3d 1169 (9th Cir. 2004) .............................................................................................. 2

*DaimlerChrysler Corp. v. Cuno*
  547 U.S. 332 (2006) .............................................................................................................. 7

*Gikas v. Zolin*
  6 Cal. 4th 841 (1993) ........................................................................................................... 9

*Gonzales v. Gorsuch*
  688 F.2d 1263 (9th Cir. 1982) .................................................................................... 7, 8, 9

*Juliana v. United States*
  947 F.3d 1159 (9th Cir. 2020) .............................................................................................. 7

*Levine v. Vilsack*
  587 F.3d 986 (9th Cir. 2009) .............................................................................................. 10

*Libertarian Party v. Eu*
  28 Cal. 3d 535 (1980) ........................................................................................................... 3

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) .......................................................................................................... 2, 7

*M.S. v. Brown*
  902 F.3d 1076 (9th Cir. 2018) ........................................................................................ 7, 10

*Maya v. Centex Corp.*
  658 F.3d 1060 (9th Cir. 2011) .............................................................................................. 7

# TABLE OF AUTHORITIES
(continued)

Page

*Mecinas v. Hobbs*
  30 F.4th 890 (9th Cir. 2022) .................................................................................... 12

*Mi Familia Vota v. Hobbs*
  608 F. Supp. 3d 827, 830 (D. Ariz. 2022) ............................................................... 12

*National Federation of the Blind of Alabama v. Allen*
  661 F. Supp. 3d 1114, 1123 (N.D. Ala. 2023) .............................................. 9, 10, 12

*Peterson v. Highland Music, Inc.*
  140 F.3d 1313 (9th Cir. 1998) .................................................................................. 13

*Physicians & Surgeons Lab'ys, Inc. v. Dep't of Health Servs.*
  6 Cal. App. 4th 968 (1992) ........................................................................................ 9

*Silvers v. Sony Pictures Ent., Inc.*
  402 F.3d 881 (9th Cir. 2005) (en banc) ..................................................................... 8

**STATUTES**

California Elections Code
  § 1 ............................................................................................................................... 3
  § 303.3 ................................................................................................................ 5, 6, 9
  § 320 ........................................................................................................................... 3
  § 362 ........................................................................................................................... 4
  § 2102 ......................................................................................................................... 3
  § 2183 ......................................................................................................................... 3
  § 2500 ....................................................................................................................... 10
  § 3000.5 ............................................................................................................ 3, 5, 10
  § 3003 ......................................................................................................................... 5
  § 3011 ......................................................................................................................... 5
  § 3016.7 ...................................................................................................................... 5
  § 3017 ......................................................................................................................... 3
  § 3019 ..................................................................................................................... 3, 5
  § 3105 ......................................................................................................................... 6
  § 3106 ..................................................................................................................... 6, 8
  § 12172.5 .................................................................................................................... 4
  § 12220 ....................................................................................................................... 3
  § 12280 ....................................................................................................................... 3
  § 15150 ....................................................................................................................... 3
  § 15375 ....................................................................................................................... 3
  § 19202 ....................................................................................................................... 4
  § 19205 ................................................................................................................... 6, 9
  § 19295 ....................................................................................................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Government Code
  § 11135 .................................................................................................................. 7
  § 12172.5(a) .......................................................................................................... 4

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 12(b)(1) ..................................................................................................... 1, 7
  Rule 12(h)(3) ......................................................................................................... 2
  Rule 65 ................................................................................................................ 13

# NOTICE OF MOTION

**TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that at 9:30 a.m. on September 23, 2024, at the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Courtroom C, 15th Floor, Defendant California Secretary of State Shirley N. Weber, Ph.D. (the "Secretary"), will and hereby does move to dismiss this action under Federal Rule of Civil Procedure 12(b)(1).

The Secretary makes this motion on the ground that the Court lacks jurisdiction because Plaintiffs lack Article III standing. Specifically, the Court cannot redress Plaintiffs' claimed injuries through any order in this action.

This Motion is based on this Notice of Motion and Motion to Dismiss; the accompanying Memorandum of Points and Authorities; all pleadings and papers on file in this action; any evidence or materials that may be presented at the hearing; the oral argument of counsel; and upon such additional matters as the Court may deem appropriate.

Dated:  August 16, 2024                     Respectfully submitted,

<div style="margin-left:3em">

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JANE E. REILLEY
Deputy Attorney General


*/s/ Nicholas R. Green*
NICHOLAS R. GREEN
Deputy Attorney General
*Attorneys for Defendant
California Secretary of State
Shirley N. Weber, Ph.D.*

</div>

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.  INTRODUCTION**

Plaintiffs California Council of the Blind, National Federation of the Blind of California, Christopher Gray, Russell Rawlings, and Vita Zavoli (collectively, "Plaintiffs") seek an order requiring Defendant, California Secretary of State Shirley N. Weber, Ph.D. (the "Secretary"), to "certify" a system that would allow them to receive, mark, and return their vote-by-mail ballots completely electronically. But this Court has already explained in its order denying Plaintiffs' motion for a preliminary injunction that the Secretary simply does not have that authority. For that reason alone, the Court cannot fashion any relief that will redress Plaintiffs' claimed injuries and Plaintiffs therefore lack constitutional standing.

But even if the Secretary could certify the type of system Plaintiffs seek—and she cannot—the Secretary lacks the ability to compel California's 58 separate county elections offices to *implement* that system. Instead, each county registrar of voters would be left to decide for itself whether to offer the "certified" system for voters with print disabilities, a state of affairs which could result in a balkanized, patchwork set of ballot return systems across the State. Only an order from this Court requiring *each county* to implement the new system would provide Plaintiffs with the relief they seek. Plaintiffs, however, have failed to name any county defendants and the Court cannot bind them in this proceeding. For this reason, too, Plaintiffs have failed to establish redressability, an "irreducible minimum" requirement for Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

In the absence of constitutional standing, the Court lacks jurisdiction. *See, e.g.*, *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."). Where there is no jurisdiction, the Court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). For the reasons explained in this motion, the Court should do so here.

## II. STATEMENT OF THE ISSUES PRESENTED

1. Whether Plaintiffs have adequately alleged their standing to sue under Article III of the United States Constitution, where the Court cannot redress their claimed injuries through any order in this action.

## III. FACTUAL BACKGROUND

### A. California's Elections System

Three separate sources of authority establish and regulate California's elections system: the Legislature, the State's 58 counties, and the Secretary of State.

#### 1. The Legislature's plenary power.

Broadly speaking, the California Constitution vests the Legislature with plenary power to issue uniform rules for the conduct of elections. *Libertarian Party v. Eu*, 28 Cal. 3d 535, 540 (1980) (observing that "Article II of the California Constitution vests the Legislature with plenary power over the conduct of elections in this state."). The Legislature's state-wide policy choices and the rules that flow from them are reflected in the Elections Code, which provides a comprehensive set of generally applicable provisions governing elections in California. *See generally* Cal. Elec. Code § 1.[1]

#### 2. The counties' administrative functions.

When it comes to administering elections, however, California's system is at its heart a local one. The Elections Code defines an "[e]lections official" as a "person who is charged with the duty of conducting an election," including "[a] county clerk, city clerk, registrar of voters, or elections supervisor having jurisdiction over elections within any county, city, or district within the state." § 320. "Elections officials"—*i.e.*, local and county officials—are responsible for, among other things: processing voter registrations (§ 2102(a)); maintaining a roster of registered voters (§ 2183); dividing their jurisdiction into precincts (§ 12220); designating polling places (§ 12280); mailing ballots to every registered voter in advance of elections (§ 3000.5); receiving mail ballots (§ 3017); verifying signatures on mail ballots (§ 3019); counting both in-person and mail ballots (§ 15150); and reporting final results to the Secretary of State (§ 15375).

---

[1] Except as otherwise indicated, all statutory citations are to the California Elections Code.

### 3. The Secretary's role.

As the state's chief elections officer, the Secretary of State is charged with "administer[ing] the provisions of the Elections Code[,]" as well as seeing that "elections are efficiently conducted and that state election laws are enforced." Cal. Gov't Code § 12172.5(a); *see also* Compl., ECF No. 1, ¶ 21. The Secretary may assist local county elections officials in carrying out their duties under the Elections Code, but it is ultimately up to the counties to comply with the statutory rules applicable to them. When the Secretary believes a local elections official is not in compliance with the Legislature's requirements as reflected in the Code, she is encouraged to "assist the county elections officer in discharging the officer's duties." § 12172.5(b). If "the Secretary of State concludes that state election laws are not being enforced, the Secretary of State shall call the violation to the attention of the district attorney of the county or to the Attorney General." *See id.*

The Legislature has also charged the Secretary with certifying certain components of the State's electoral machinery, including (among others) voting systems, [2] electronic poll books, and Remote Accessible Vote-by-Mail ("RAVBM") systems. *See* §§ 19202 (voting systems); 2550 (electronic poll books); 19281 (RAVBM systems); *see also* Compl. ¶ 21 (citing Elections Code provisions governing RAVBM certification). Although the Secretary must *certify* these features of the election system, the Elections Code does not provide the Secretary with the authority to order a county to *implement* any given system. Instead, individual counties are free to choose among certified systems and, so long as their choice complies with the Elections Code, they may choose not to offer a particular certified system.

### B. California's Vote-by-Mail System

California is a leader in ballot access, and unlike other jurisdictions permits any registered voter to submit their ballot by mail; the law imposes no limitation on the categories of voters who may use the program and voters need not submit an application. *See* Compl. ¶ 25; *see also*

---

[2] A "voting system" is defined in the Elections Code as "a mechanical, electromechanical, or electronic system and its software, or any combination of these used for casting a ballot, tabulating votes, or both." § 362. In other words, voting systems are the systems used at polling places and mail-ballot counting centers to record voter choices and count votes.

§ 3003. Indeed, California law requires local county elections officials to automatically mail a ballot to every registered voter in advance of each election. *See id.* ¶ 26; *see also* § 3000.5.

The Elections Code sets out three ways most voters may return a mail ballot to their local county elections office: (1) in person; (2) using a mail ballot drop box location; or (3) by placing the ballot in the U.S. Mail. *See id.*; *see also* § 3017(a)(1). The Elections Code generally requires that the voter place the completed ballot in an "identification envelope," which the voter must then "sign . . . in the voter's own handwriting[.]" § 3011(a). When a local county elections official receives a mail ballot identification envelope, the official must compare the signature on the envelope with a signature on file for the voter to confirm the mail ballot's authenticity. *See generally* § 3019. When a voter's signature does not match the signature on file, or when the voter simply forgets to sign the identification envelope, the Elections Code provides a mechanism for the voter to "cure" the deficiency by submitting a separate signature to their elections official. *See* § 3019(d)–(e).

California has also embraced RAVBM systems, which increase accessibility for voters. *See* Compl. ¶¶ 27; 29. In contrast to a "voting system" used by county elections offices at polling places and vote counting centers for casting and tabulating votes, California law defines an RAVBM as a "mechanical, electromechanical, or electronic system and its software that is used *for the sole purpose of marking an electronic vote by mail ballot* for a voter who shall print the paper cast vote record to be submitted to the elections official." § 303.3 (emphasis added). Using an RAVBM system, voters may "receive, read, and mark their ballot electronically on their own device, such as a personal computer," and may utilize "assistive technology, allowing voters with disabilities to use, for example, a screen reader or a sip-and-puff device to read and/or mark their ballot." Compl. ¶ 26. Any California voter may use their county's certified RAVBM system to receive and mark a blank ballot. *See id.*; *see also* § 3016.7. Voters who choose to use an RAVBM system must submit their paper cast vote record to their local county elections office in one of the three ways authorized for all mail ballots. *See* Compl. ¶ 27.

The Elections Code provides a narrow carve-out from the normal mail ballot procedure for certain voters in the military or residing overseas. *See* Compl. ¶¶ 26, 35. Those voters may

5

1  receive their blank ballots electronically, including by using the RAVBM system, *see* § 3105, and
2  may also return their ballots by traditional facsimile transmission. *See* § 3106. The Elections
3  Code does not authorize any other category of voters to return their ballots by facsimile.

### C. The Elections Code Forbids Internet Voting

The Elections Code reflects the California Legislature's bright-line policy choice to forbid all forms of Internet voting. The Code does not authorize *any* category of voters (including overseas and military voters) to return marked ballots by electronic facsimile ("e-fax") or by any other means connected to the Internet. Indeed, California law explicitly prohibits any voting system—the systems used for casting and tabulating votes—from connecting to the Internet or having any wireless capabilities. *See* § 19205.

Similarly, the use of any RAVBM system that could transmit voter choices over the Internet is prohibited. § 19295(a). RAVBMs also cannot be used for returning a voter's choices to county election officials and may not connect to a system that actually casts or tabulates votes (*i.e.*, a voting system). § 303.3 ("[a] [RAVBM] system shall not be connected to a voting system at any time.").

### D. Plaintiffs' Allegations and Requested Relief

Plaintiffs include three individual California voters who allege that they have print disabilities, *see* Compl. ¶¶ 40–42, defined in the Complaint as "disabilities that prevent a voter from reading, marking, holding, handling, or manipulating a ballot, including blindness, visual impairment, an intellectual or developmental disability, or impairment in dexterity, such that the voter is unable to return a ballot privately and independently." *Id.* ¶ 1 n.1. Organizational Plaintiffs California Council of the Blind and the National Federation of the Blind of California allege that their membership consists of "blind and visually impaired individuals[.]" *Id.* ¶¶ 19–20.

Plaintiffs allege that, because of their print disabilities, "print documents are not accessible[.]" *See, e.g.*, *id.* ¶ 16–18. They further assert that, because the State's Vote-by-Mail system includes "paper-based requirements[,]" they are "forced to rely on sighted individuals and/or individuals who can provide physical assistance" to submit their vote through the mail. *Id.* ¶ 7. Plaintiffs contend that this violates the Americans with Disabilities Act ("ADA"), Section

1   504 of the Rehabilitation Act, and California Government Code § 11135. *See id.* ¶¶ 45–57
2   (ADA); 58–68 (Rehabilitation Act); 69–77 (Government Code). The Complaint seeks a
3   declaration that the Vote-by-Mail program violates these laws and an injunction "requiring
4   Defendant to certify a remote accessible vote-by-mail system with an accessible electronic ballot
5   return option that allows voters with print disabilities to cast their ballots privately and
6   independently[.]" *Id.*, Prayer ¶ 78–79.

**IV.   LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of constitutional standing. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (emphasis omitted)).

As "[t]he party invoking federal jurisdiction[,]" Plaintiffs bear the burden of establishing their standing under Article III. *Lujan*, 504 U.S. at 561. "A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California v. Texas*, 593 U.S. 659, 668–69 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Plaintiffs must support each of these "irreducible minimum" requirements "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the motion to dismiss stage, the court accepts the material allegations in the complaint as true and construes them in favor of the party asserting jurisdiction. *Maya*, 658 F.3d at 1068.

**V.   ARGUMENT**

"Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). "To establish redressability, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561); *see also Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020) ("Redress need not be guaranteed, but it must be more than merely

1  speculative." (internal quotation marks omitted)). Here, Plaintiffs' claimed injuries flow from the
2  provisions of the Elections Code that require them to sign their identification envelopes in their
3  own handwriting and return their mail ballots in paper form. *See, e.g.*, Compl. ¶¶ 5–7. Plaintiffs
4  make clear in their complaint that an "electronic ballot return (or e-return) option would remedy
5  the problem[.]" *Id.* ¶ 9. Indeed, that is the *only* specific, non-declaratory relief sought in the
6  complaint, apart from attorneys' fees. *See id.*, Prayer ¶¶ 78–80.
7        But, as this Court has already recognized in its order denying Plaintiffs' motion for a
8  preliminary injunction, Plaintiffs seek relief that the Secretary *(1)* has no authority to provide and
9  *(2)* no power to implement in practice. *See* Order on Mot. for Prelim. Inj. ("PI Order"), ECF No.
10 60, at 11–16. For that reason, the Court cannot redress Plaintiffs' injuries through this lawsuit and
11 should dismiss their complaint.

12     **A.**    **The Secretary does not have authority to "certify" the system Plaintiffs seek.**
13

14       Because an order directed to a party that is powerless to implement it does nothing to
15 resolve a plaintiff's injury, "if the wrong parties are before the court . . . the plaintiff lacks
16 standing." *Gonzales*, 688 F.2d at 1267. Here, the Secretary cannot provide the relief Plaintiffs
17 seek in their Complaint because the Elections Code is clear that the Secretary *cannot* certify an
18 electronic return system. Instead, the Elections Code itself limits the ways voters like Plaintiffs
19 may return mail ballots to three: (1) in person delivery: (2) ballot drop boxes; and (3) the U.S.
20 Mail.[3] *See* § 3017(a)(1). In other words, the Code's exclusion of electronic return from the list of
21 acceptable means of mail ballot return makes clear that electronic return is *not* an authorized
22 method. *See, e.g.*, *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc)
23 (noting there is "a presumption that when a statute designates certain persons, things, or manners
24 of operation, all omissions should be understood as exclusions." (internal quotation marks

---

[3] Plaintiffs allege that they reside in California and do not assert that they are temporarily located outside the county in which they reside or that they serve on active duty in the military. *See* Compl. ¶¶ 16–18. Based on the complaint's allegations, Plaintiffs are accordingly ineligible to use the facsimile return option available to overseas and military voters. *See* § 3106.

omitted)); *see also Gikas v. Zolin*, 6 Cal. 4th 841, 852 (1993) ("The expression of some things in a statute necessarily means the exclusion of other things not expressed.").

In their complaint, Plaintiffs identify only the Secretary's authority to certify RAVBM systems as a basis for her ability to certify an electronic ballot return method. *See* Compl. ¶ 21. But the system Plaintiffs ask the Court to impose is by definition *not* an RAVBM system so these provisions cannot serve as a basis for the Secretary's authority. RAVBM systems may be "used for the sole purpose of *marking* an electronic vote by mail ballot for a voter who shall *print the paper cast vote record* to be submitted to the elections official." § 303.3 (emphasis added). The Secretary is in fact specifically prohibited from certifying any RAVBM system that *could* transmit voter choices over the Internet. § 19295. In the same way, the Secretary is absolutely forbidden from certifying any voting system that connects to the Internet or which has wireless capabilities. § 19205.

The Secretary cannot ignore these unambiguous legislative commands. Although the Government Code provides that "[t]he Secretary of State may adopt regulations to ensure the uniform application and administration of state election laws," Cal. Gov't Code § 12172.5(d), that grant of authority does not permit the Secretary to promulgate regulations that are directly contrary to self-executing provisions of the Elections Code. Under black-letter California law, "[a]dministrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void." *Ass'n for Retarded Citizens v. Dep't of Developmental Servs.*, 38 Cal. 3d 384, 391 (1985) *see also Physicians & Surgeons Lab'ys, Inc. v. Dep't of Health Servs.*, 6 Cal. App. 4th 968, 982 (1992) ("regulations that alter or amend the statute or enlarge or impair its scope are void."). Because the Secretary simply lacks the authority to issue the kind of certification that Plaintiffs seek, the Court is "unable to grant the relief that relates to the harm" and Plaintiffs lack standing. *Gonzales*, 688 F.2d at 1267.

*National Federation of the Blind of Alabama v. Allen* is instructive. There, a federal court considered a very similar ADA challenge to Alabama's absentee voting rules and concluded that the plaintiffs lacked standing. *See* 661 F. Supp. 3d 1114, 1123 (N.D. Ala. 2023). The *Allen* court emphasized that, under Alabama law, the Secretary of State lacked "the authority to promulgate

1 rules to provide an electronic voting option to *any* domestic voters[.]" *Id.* at 1121 (emphasis in
2 original). The Court further observed that the Alabama Secretary of State's rulemaking authority
3 "is limited by legislative directives." *Id.* at 1122. Just so here; the Secretary lacks authority to
4 certify the system Plaintiffs identify as their only desired form of relief in their complaint, and
5 they therefore cannot establish redressability.

6 **B.  Any order the Court might issue in this case will not bind the counties.**

7 Even if the Secretary could "certify" an electronic ballot return option for voters with print
8 disabilities—and she cannot—Plaintiffs have still failed to demonstrate redressability because it is
9 speculative whether California's 58 distinct, independent county registrars of voters would accept
10 ballots submitted through such a certified system.

11 Where "a favorable judicial decision would not require the defendant to redress the
12 plaintiff's claimed injury, the plaintiff cannot demonstrate redressability, unless she adduces facts
13 to show that the defendant or a third party are nonetheless likely to provide redress as a result of
14 the decision." *M.S.*, 902 F.3d at 1083 (internal citations omitted). In other words, "the 'likely'
15 standard is altered somewhat when third parties not before the court must change their behavior in
16 order for any injury suffered to be redressed." *Levine v. Vilsack*, 587 F.3d 986, 992 (9th Cir.
17 2009).

18 Counties are responsible for distributing, collecting, and counting mail ballots. *See*
19 §§ 3000.5; 3017; 3019; 15101; 15109; 15302. Importantly, nothing in the Elections Code
20 *requires* a county to adopt any particular certified system. Wherever the Elections Code requires
21 certification of a particular aspect of the State's electoral machinery, it provides only that local
22 jurisdictions are precluding from using an *uncertified* system. For example, when it comes to
23 voting systems, "[a] jurisdiction shall not purchase or contract for a voting system unless it has
24 been certified or conditionally approved by the Secretary of State." § 19202(d). But the Code
25 does not require any jurisdiction to adopt any *particular* certified system. And in the case of
26 electronic poll books (another type of certified system), jurisdictions are not required to use them
27 at all; they may use an alternative like an election management system to comply with relevant
28 Code requirements. *See* §§ 2500; 4005(a)(4)(E).

1    So, California counties could—consistent with a hypothetical order requiring the Secretary to "certify" electronic mail ballot return, as Plaintiffs request—simply choose not to implement the system. Instead, they could require voters in their jurisdictions to use one of the three alternative methods that the Elections Code already permits (in-person delivery, ballot drop boxes, and the mail). And as explained in detail above, an electronic return option would run counter to clear statutory limitations in the Elections Code. Plaintiffs have not alleged any facts that suggest it is likely the counties would adopt a brand-new return method that is expressly prohibited under current law.

In other words, even on the face of the complaint, it is speculative whether the relief Plaintiffs seek would result in any meaningful amelioration of their claimed injuries. Where actual relief is contingent upon the uncertain conduct of third parties in response to an equitable order, courts conclude that Plaintiffs lack standing. Two district court decisions on elections issues in Arizona provide good examples.

In *Arizonans for Fair Elections v. Hobbs*, plaintiffs challenged Arizona's requirement that electors must sign ballot initiative petitions in the physical presence of another person who in turn is required to submit an affidavit verifying the signatures on the petition. *See* 454 F. Supp. 3d 910, 913–14 (D. Ariz. 2020), *appeal dismissed* 2020 WL 4073195, at *1 (9th Cir. May 19, 2020). Those requirements are present in the Arizona constitution, but the Arizona Legislature also codified them in corresponding statutory provisions. *See id.* Plaintiffs challenged only the statutory requirements and argued that, if the Court struck them down and ordered the use of an electronic signature gathering system, the Arizona courts would conclude that the electronic signature system was in substantial compliance with the constitution. *See id.* at 915, 917–18.

The district court, however, concluded that it was "entirely speculative" whether the Arizona courts would agree with the challenger's view of the Arizona constitution, highlighting additional federalism concerns with resolving that issue in the context of a motion for injunctive relief in federal court. *See id.* at 919–920. Because of the uncertainty regarding the state courts' resolution of the remaining constitutional question, and the corresponding uncertainty with

1 respect to whether plaintiffs would be permitted to use the electronic signature gathering system
2 at all, the Court dismissed the action for lack of redressability. *See id.* at 920.

3       In *Mi Familia Vota v. Hobbs*, plaintiffs sought to invalidate an Arizona law that permitted
4 voters to cure mail ballots with missing signatures only up until 7:00 p.m. on election day.[4] 608 F.
5 Supp. 3d 827, 830 (D. Ariz. 2022). The plaintiffs contended that, if the law were struck down,
6 more Arizonans would have their votes counted through after-election curing. *Id.* at 856–58.
7 Examining Arizona law, however, the *Mi Familia Vota* court concluded that "no preexisting
8 statute requires county recorders to" permit voters to cure their ballots after election day. *See id.*
9 at 859. Because no law *required* Arizona counties to permit curing after election, invalidating the
10 law specifically prohibiting the practice would not "amount to a significant increase in the
11 likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Id.*
12 (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 900 (9th Cir. 2022)).

13       That same analysis governs this case. Even if the Secretary were ordered to certify an
14 electronic return system, there is no preexisting law requiring California counties to adopt it. So,
15 such an order does not "amount to a significant increase in the likelihood" that Plaintiffs will
16 obtain the relief they seek. The *Allen* court, considering essentially the same case as the one
17 Plaintiffs bring here, came to the same conclusion. That court emphasized that in Alabama,
18 county elections officials, "not the Secretary, are in charge of administering absentee ballots[.]"
19 661 F. Supp. 3d at 1123. The court reasoned that "[n]othing requires the [county officials] to
20 disregard Alabama law" in favor of rules promogulated by the Alabama Secretary of State in
21 response to an injunction. *Id.* The *Allen* decision emphasized that "only [the county officials]
22 presence as parties would give this court the power to bind them." *Id.* But, as in *Allen*, Plaintiffs
23 here have not named any county defendants. *See generally* Compl.

24       Plaintiffs have likewise failed to allege that the counties are the Secretary's "agents," or that
25 they are in "active concert" with the Secretary of State. *See generally id.* As such, the counties are

---

[4] Plaintiffs also sought to invalidate a different law the required elections officials to purge voters from early voting lists if they failed to vote by mail in two consecutive election cycles. *Mi Familia Vota*, 608 F. Supp. 3d at 830. The *Mi Familia Vota* court's redressability analysis did not consider this separate challenge. *See id.* at 858–862.

12

beyond the Court's injunctive power in this case under Rule 65. *See* Fed. R. Civ. P. 65(d). Indeed, Plaintiffs cannot plausibly plead facts that would draw the counties within the Court's injunctive power in the absence of naming them as defendants. The "active concert" exception requires a party seeking to hold a third-party in contempt for violating an injunction to show that the third-party is either (1) aiding or abetting *the defendant* in violating the order or (2) is "legally identified" with the defendant. *See, e.g.*, *Am. Semiconductor, Inc. v. Cal. Assignments LLC*, No. 12-CV-06138-LHK, 2013 WL 5937968, at * 4 (N.D. Cal. Oct. 30, 2013) (quoting *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998)). Here, if the Court orders the Secretary to certify an electronic ballot return option as Plaintiffs ask, and the Secretary complies, there is no violation of the order at all. If the counties then refuse to *use* the system the Secretary certifies, they are not aiding or abetting the Secretary's violation because there is no violation to speak of. *See id.* at *4. Nor can Plaintiffs show that the counties are legally identified with the Secretary—they are not legally entitled to act on the Secretary's behalf. *See id.* (collecting cases). Plaintiffs substantively conceded that the counties are beyond the Court's injunctive power in this case during the preliminary injunction proceedings, acknowledging both in their briefing and at oral argument that a county's refusal to use a certified electronic return system "would be a separate suit." *See* Plfs.' Reply in Support of Mot. for Prelim. Inj., ECF No. 41, at 3; Prelim. Inj. Hr'g Tr., ECF No. 64, at 24:3–4 ("that would be separate suits").

Simply put, there is nothing that would require the counties to adopt "a remote accessible vote-by-mail system with an accessible electronic ballot return option" if the Court ordered the Secretary "to certify" one as Plaintiffs request in their Prayer for Relief. Compl. at Prayer ¶ 79. Because that renders Plaintiffs' prospects of obtaining relief no more than "speculative," they have failed to sufficiently plead redressability and the Court should dismiss this case for want of jurisdiction.

///

///

///

**VI. CONCLUSION**

At bottom, Plaintiffs seek an order compelling the Secretary to issue a certification she is powerless to provide. And even if the Secretary could certify an electronic ballot return method, any of California's 58 counties could freely choose not to implement that system. For both these reasons, Plaintiffs' claimed injuries are not redressable and Plaintiffs therefore lack Article III standing. The Court should dismiss this case for lack of jurisdiction.

Dated:  August 16, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JANE E. REILLEY
Deputy Attorney General

*/s/ Nicholas R. Green*
NICHOLAS R. GREEN
Deputy Attorney General
*Attorneys for Defendant*
*California Secretary of State*
*Shirley N. Weber, Ph.D.*

# CERTIFICATE OF SERVICE

Case Name: *California Council of the Blind, et al. v. Shirley N. Weber*   No. **3:24-cv-01447-SK**

I hereby certify that on August 16, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S NOTICE OF MOTION & MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on August 16, 2024, at San Francisco, California.

M. Paredes
Declarant

Signature

SA2024301128
44286534.docx