Sean Betouliere (SBN 308645)
Shawna L. Parks (SBN 208301)
Rosa Lee Bichell (SBN 331530)
**DISABILITY RIGHTS ADVOCATES**
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Tel: (510) 665-8644
Fax: (510) 665-8511
Emails: sbetouliere@dralegal.org
        sparks@dralegal.org
        rbichell@dralegal.org

Eve Hill (SBN 202178)
Neel Lalchandani (SBN 310480)
Lauren J. Kelleher*
**BROWN, GOLDSTEIN & LEVY LLP**
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202-1633
Tel: (410) 962-1030
Fax: (410) 385-0869
Emails: ehill@browngold.com
        nkl@browngold.com
        lkelleher@browngold.com

Frederick P. Nisen (SBN 184089)
Karie Lew (SBN 234666)
**DISABILITY RIGHTS CALIFORNIA**
1831 K Street
Sacramento, CA 95811-4114
Tel: (916) 504-5800
Fax: (916) 504-5801
Emails:  fred.nisen@disabilityrightsca.org
         karie.lew@disabilityrightsca.org

Attorneys for Plaintiffs (continued on next page)
*Pro Hac Vice

# THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA COUNCIL OF THE BLIND, NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, CHRISTOPHER GRAY, RUSSELL RAWLINGS, and VITA ZAVOLI,<br><br>Plaintiffs,<br><br>v.<br><br>SHIRLEY N. WEBER, in her official capacity as California Secretary of State,<br><br>Defendant. | **Case No. 3:24-cv-01447-SK**<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131 *et seq.*)<br><br>Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq.*)<br><br>California Government Code § 11135 *et seq.* |

1

2   Lili V. Graham (SBN 284264)
    Andrea Rodriguez (SBN 290169)
3   Paul R. Spencer (SBN 292767)
    **DISABILITY RIGHTS CALIFORNIA**
4   530 B Street, Suite 400
    San Diego, CA 92101-4426
5   Tel: (619) 239-7861
    Fax: (619) 239-7906
6   Emails:  lili.graham@disabilityrightsca.org
              andrea.rodriguez@disabilityrightsca.org
7              paul.spencer@disabilityrightsca.org

8   Attorneys for Plaintiffs (continued from previous page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **INTRODUCTION**

1.      Plaintiffs California Council of the Blind, National Federation of the Blind of California, Christopher Gray, Russell Rawlings, and Vita Zavoli bring this action to challenge discrimination against voters with print disabilities in California's vote-by-mail program.

2.      "Print disabilities" are disabilities that prevent a voter from reading, marking, holding, handling, and/or manipulating a paper ballot privately and independently. Blindness is one type of print disability. Print disabilities also include certain visual impairments and certain disabilities that cause dexterity impairments where the nature and degree of those impairments prevent the aforementioned actions.

3.      Plaintiffs estimate that there are currently approximately 4,300 eligible blind voters and 200 eligible voters with tetraplegia in California. The data for adults with cerebral palsy are limited; based on the childhood prevalence rates of cerebral palsy, Plaintiffs estimate that, at most, there are 15,000 eligible voters with cerebral palsy resulting in manual dexterity impairments in California that qualify them as voters with print disabilities.

4.      California voters with print disabilities, like other U.S. citizens across the country, are proud to exercise the right to vote for their elected representatives and for or against policies that impact their lives.

5.      In recent elections, record numbers of California voters have cast their ballots by mail. As part of an effort to increase voting access, the option to vote by mail is now enshrined as a permanent feature of the State of California's electoral system.

6.       While many voters have benefitted from California's vote-by-mail program ("Vote-by-Mail Program" or "Program"), that Program excludes and discriminates against individuals with print disabilities.

7.      Although California voters with print disabilities may receive and mark their vote-by-mail ballots electronically on their own devices (like a personal computer) using a remote accessible vote-by-mail ("RAVBM") system certified or conditionally approved by the

California Secretary of State, there is no option to return their ballots electronically. Instead, voters who use an RAVBM system must print their ballot selections, place that printout in a government-issued paper ballot return envelope, sign and seal the envelope, and then arrange for the return of the paper ballot through one of three non-electronic means.

8.     These paper-based requirements impose significant—and unlawful—barriers for voters with print disabilities. By definition, print disabilities impede an individual's ability to read, mark, hold, handle, and/or manipulate printed materials.

9.     As a result, voters with print disabilities across the state (including Plaintiffs and their members) have been unable to complete the paper-based requirements privately and independently. Instead, they have been forced to rely on individuals who can provide assistance to perform the paper-based requirements or to forgo voting by mail altogether.

10.     Forcing individuals with print disabilities to rely on the assistance of another person to vote deprives them of the right to express their political choices without others' presence or knowledge (that is, on a secret ballot)—a hallmark of our electoral process. The Vote-by-Mail Program's paper-based requirements have thus denied California voters with print disabilities their fundamental right to vote privately and independently.

11.     Defendant Shirley Weber, the California Secretary of State, has the obligation to make the Vote-by-Mail Program accessible to voters with print disabilities despite discriminatory sections of the California Elections Code. The addition of a readily available electronic ballot return (or e-return) option would remedy the problem, as it would allow voters with print disabilities to use their own devices, not only to read and mark their ballots but also to submit them.

12.     Multiple other states across the country already offer some form of e-return for certain voters with disabilities. California itself already allows over 116,000 military and overseas voters to return their ballot selections by facsimile ("fax"). In practice, these voters not only can submit their ballot selections by electronic fax (instead of through a fax machine) but already have been doing so.

1

## JURISDICTION

2      13.     Plaintiffs bring their claims pursuant to title II of the Americans with Disabilities

3   Act, 42 U.S.C. § 12131 *et seq.* (hereinafter "Title II"), Section 504 of the Rehabilitation Act of

4   1973, 29 U.S.C. § 794 *et seq.* (hereinafter "Section 504"), and California Government Code

5   section 11135(a).

6      14.     The Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant

7   to 28 U.S.C. §§ 1331 and 1343.

8      15.     The same events and omissions forming the basis of Plaintiffs' federal claims

9   form the basis of their state-law claim. Thus, this Court has supplemental jurisdiction over

10  Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367(a).

11     16.     The Court has authority to issue a declaratory judgment under 28 U.S.C. §§ 2201,

12  2202, and authority to issue injunctive relief under 42 U.S.C. § 12133.

13

## VENUE

14     17.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §

15  1391(b)(2) because Plaintiffs Christopher Gray and Vita Zavoli reside and vote within this

16  district; Plaintiffs California Council of the Blind and National Federation of the Blind of

17  California have members who reside and vote within this district; Defendant performs official

18  duties that impact and constrain how the Vote-by-Mail Program operates in this district; and a

19  substantial part of the events and omissions giving rise to the claims have occurred and continue

20  to occur in this district.

21

## DIVISIONAL ASSIGNMENT

22     18.     Because Plaintiff Christopher Gray resides in San Francisco and a substantial part

23  of the events and omissions giving rise to the claims have occurred in the City and County of San

24  Francisco, and because Plaintiff Vita Zavoli resides in the County of Alameda and a substantial

25  part of the events and omissions giving rise to the claims have occurred in the County of

26  Alameda, this case should be assigned to the San Francisco Division or the Oakland Division of

27  this Court pursuant to Civil Local Rule 3-2(c)-(d).

28

1

**PARTIES**

2

**I.    Plaintiffs**

3      19.    Plaintiff Christopher Gray is a registered California voter who resides in San

4    Francisco County, California. Mr. Gray is blind. Due to his disability, print documents are not

5    accessible to him, which means he cannot vote privately and independently through California's

6    Vote-by-Mail Program.

7      20.    Plaintiff Russell Rawlings is a registered California voter who resides in

8    Sacramento County, California. Mr. Rawlings has cerebral palsy, which limits his manual

9    dexterity. Due to his disability, he cannot mark or handle a paper ballot, which means he cannot

10   vote privately and independently through California's Vote-by-Mail Program.

11     21.    Plaintiff Vita Zavoli is a registered California voter who resides in Alameda

12   County, California. Ms. Zavoli is blind. Due to her disability, print documents are not accessible

13   to her, which means she cannot vote privately and independently through California's Vote-by-

14   Mail Program.

15     22.    Plaintiff California Council of the Blind ("CCB") is a grassroots membership

16   organization, with chapters and affiliates throughout California. It is an affiliate of the American

17   Council of the Blind, a national membership organization. CCB's membership consists of blind

18   and visually impaired individuals, as well as fully sighted allies, residing in California. It has

19   approximately 500 members. Plaintiffs Christopher Gray and Vita Zavoli are CCB members.

20   CCB's purpose, as stated in article 2 of its bylaws, is "to increase the independence and equality

21   for all Californians who are blind or low vision." Its mission is "to increase the independence,

22   security, equality of opportunity, and quality of life for all Californians who are blind and

23   visually impaired." Its services include providing information and referrals, technical assistance,

24   and advocacy.

25     23.    Plaintiff National Federation of the Blind of California ("NFBCA") is a nonprofit

26   volunteer membership organization operating under the laws of California, with chapters and

27   divisions throughout California. It is an affiliate of the National Federation of the Blind, a

28

national membership organization that "promote[s] equal opportunity for the blind" by removing "legal, economic, and societal barriers to full participation by blind people in employment, education, recreation, and all other aspects of community life." NFBCA's membership consists of blind individuals, as well as sighted individuals who are interested in the organization's purpose and activities. It advocates to protect and promote the civil rights of blind persons through public education and advocacy.

## II.   **Defendant**

24.     Defendant Shirley N. Weber is the current California Secretary of State. She is sued only in her official capacity.

25.     As Secretary of State, Defendant is the "chief elections officer of the state." Cal. Elec. Code § 10(a); Cal. Gov't Code § 12172.5(a). Her powers and duties as the State's chief elections officer are set forth throughout the California Elections Code and at section 12172.5 of the California Government Code.

26.     One of Defendant's duties is to "administer the provisions of the Elections Code." Cal. Gov't Code § 12172.5(a).

27.     Another one of Defendant's duties is to "see that elections are efficiently conducted." *Id*.

28.     Defendant also has the duty to ensure "that state election laws are enforced." *Id*. If, "at any time," Defendant concludes that state election laws are not being enforced, she "shall call the violation to the attention of the district attorney of the county or to the Attorney General." *Id*. at § 12172.5(b). In these instances, she also "may assist the county elections officer in discharging the officer's duties." *Id*.

29.     Defendant has the authority to "adopt regulations to ensure the uniform application and administration of state election laws." *Id*. at § 12172.5(d).

30.     As the State's chief elections officer and in furtherance of her duties listed above, Defendant regularly issues guidance to county elections officials through formal and informal means. Methods she uses include statewide memoranda to county clerks and registrars of voters,

1  regulations, materials on the Secretary of State website,[1] and periodic telephonic and/or video

2  meetings with county elections officials.

3      31.    Defendant's statewide memoranda to county clerks and registrars of voters,

4  known by the short form "CC/ROV memoranda," are described on the Secretary of State's

5  website as "written guidance and information to the state's county elections officials to help

6  ensure a smooth electoral process." Cal. Sec'y of State, *2024 Advisories to County Elections*

7  *Officials*, https://www.sos.ca.gov/elections/advisories-county-elections-officials/2024-

8  advisories-county-elections-officials (last visited Aug. 29, 2024). They cover a wide variety of

9  subjects, including voter registration, vote-by-mail procedures, in-person voting, and voting

10  technology, such as RAVBM systems. For example, CC/ROV Memorandum #24166,[2] issued on

11  August 15, 2024, advises county elections officials about some of the laws, processes, and

12  procedures governing RAVBM systems, with a focus on their use for the November 2024

13  presidential primary election. The Secretary of State has a history of using CC/ROV memoranda

14  to county elections officials to communicate their obligations under court orders. For example,

15  CC/ROV Memorandum #14120 notified county elections officials about a court order regarding

16  voting rights of people who have prior felonies.[3] More recently, CC/ROV memoranda #20120[4]

17

18  _____

18  [1] One example of guidance to county elections officials that is posted on the Secretary of State's

19  website is a list of frequently asked questions advising county elections officials how to comply
    with the California Voter's Choice Act. Cal. Sec'y of State*, Voter's Choice Act Frequently Asked*

20  *Questions* (May 5, 2022), https://elections.cdn.sos.ca.gov/vca/vca-faqs.pdf (last visited Aug. 29,
    2024).

21  [2] Memo from the Nakesha Robinson, Deputy Sec'y of State (HAVA), to All County

22  Clerks/Registrars of Voters, *re: General Election: Remote Accessible Vote-by-Mail* (Aug. 15,
    2024), https://elections.cdn.sos.ca.gov/ccrov/2024/august/24166nr.pdf  (last visited Aug. 29,

23  2024).

24  [3] Memo from Lowell Finley, Chief Counsel, to All County Clerks/Registrars of Voters, *re: Voter*
    *Registration: Felon Voting Court Ruling* (May 8, 2014),

25  https://elections.cdn.sos.ca.gov/ccrov/pdf/2014/may/14120lf.pdf  (last visited Aug. 29, 2024).

26  [4] Memo from Joanne Southard, Ass't Chief (Elec.Div.), to  All County Clerks/Registrars of
    Voters and Proponent, *re*: *Initiative: Court Order Related to the Random Sample of Initiative*

27  *#1879* (Jun. 19, 2020), https://elections.cdn.sos.ca.gov/ccrov/pdf/2020/june/20120js.pdf (last
    visited Aug. 29, 2024).

28

1   and #20217[5] notified county elections officials of court orders regarding signature verification

2   for petitions.

3        32.    If a court were to find that federal and state antidiscrimination laws require

4   California voters with print disabilities to be offered an option to return their vote-by-mail ballots

5   electronically, Defendant, as the State's chief elections officer and in furtherance of her duties

6   listed above, would play an essential role in, among other things, certifying a fully accessible

7   RAVBM system and making any other necessary changes to the Vote-by-Mail Program,

8   communicating the court's ruling to county elections officials, providing guidance to county

9   elections officials regarding compliance with the law, and enforcing the law as interpreted by the

10  court. Defendant also would have the authority to issue regulations consistent with the court's

11  ruling to ensure the uniform application and administration of state election law (including the

12  extent to which any such laws have been held to be preempted by federal antidiscrimination

13  mandates).

14       33.    One of Defendant's duties with respect to voting technology is to "adopt and

15  publish standards and regulations governing the use of remote accessible vote by mail [RAVBM]

16  systems." Cal. Elec. Code § 19283(a).

17       34.    When selecting which RAVBM system they will use in their county, county

18  elections officials must choose a system that the California Secretary of State has certified or

19  conditionally approved. Cal. Elec. Code § 19281(a) (no RAVBM system may be used in an

20  election in California until it has been "certified or conditionally approved" by the Secretary of

21  State); *see also id.* § 19280 (conditioning certification and approval on fulfillment of statutory

22  requirements and compliance with regulations promulgated by the Secretary of State).

23       35.    As to why electronic ballot return is not offered through RAVBM, Defendant may

24

25  _____

    [5] Memo from Jordan Kaku, Initiate & Referendum Coordinator, to All County Clerks/Registrars
26  of Voters and Proponents, *re: Initiative: Second Court Order Related to Deadlines for Initiative
    1886, Related to Gambling* (Sept. 21, 2020),
27  https://elections.cdn.sos.ca.gov/ccrov/pdf/2020/september/20217jk.pdf (last visited Aug. 29,
    2024).

28

1    argue that the California Secretary of State is and has been constrained by the following state

2    statutory requirements and prohibitions:

3         A.  California Elections Code section 303.3, which defines an RAVBM system as

4              being "for the sole purpose of marking an electronic vote by mail ballot for a

5              voter who shall print the paper cast vote record to be submitted to the elections

6              official;" and

7         B.  California Elections Code section 19295(a), which prohibits an RAVBM system

8              from transmitting a voter's ballot selections over the internet.

9    36.    By certifying or conditionally approving only RAVBM systems that require a

10   paper-based ballot return process, the California Secretary of State has prevented county

11   elections officials from choosing an RAVBM system with an online portal for electronic ballot

12   return. Thus, Defendant has denied Plaintiffs and other voters with print disabilities one of the

13   methods of ballot return—an online portal—that would give them full and equal access to

14   California's Vote-by-Mail Program.[6] This discriminatory denial is directly traceable to

15   Defendant. *See Common Cause S. Christian Leadership Conf. of Greater Los Angeles v. Jones*,

16   213 F. Supp. 2d 1106, 1108 (C.D. Cal. 2001) (finding the Secretary of State is the proper

17   defendant to address changes regarding the choices counties have when selecting voting systems

18   with varying degrees of quality).

19   37.    In addition, Defendant denies voters with print disabilities full and equal access to

20   the State's Vote-by-Mail Program by administering and enforcing state election laws that prevent

21   Counties from allowing voters with print disabilities to return their RAVBM ballots by email or

22   electronic fax.

23   38.    Presently and at all times relevant to the instant complaint, Defendant is and has

24   been a public entity under title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et*

25

26

27

28

---

[6] The two other vote-by-mail ballot return options besides an online portal that would be accessible to voters with print disabilities—and that do not implicate Defendant's certification authority—are email and fax return, as discussed *infra* ¶¶ 61-62.

*seq.*

39.     At all relevant times, Defendant has received and continues to receive federal financial assistance for election-related activities, including millions of dollars in federal funding to support state elections administration under the Help America Vote Act ("HAVA") and other federal programs, within the meaning of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a).

40.     At all relevant times, Defendant has conducted, operated, and/or administered key aspects of California's Vote-by-Mail Program and has received and continues to receive state funding and/or state financial assistance for election-related activities within the meaning of California Government Code section 11135(a).

## FACTUAL ALLEGATIONS

**III.     California's Vote-By-Mail Program is inaccessible to voters with print disabilities.**

41.     All California voters are eligible to vote by mail. Cal. Elec. Code § 3000.5.

42.     California law provides several ways for voters to receive, mark, and return their vote-by-mail ballots:

A. **Paper Vote-by-Mail Ballots**: These ballots are automatically mailed to voters who register to vote far enough in advance of an election. *See, e.g.*, Cal. Elec. Code § 3000.5(a) (setting forth the timelines for mailing election materials to active registered voters). The ballots are received by the voter, completed, and returned on paper. They may be returned by mail, in person to an elections official, or at a designated ballot drop-off location. Cal. Elec. Code § 3017(a)(1). Under California law, these are the only permitted methods of vote-by-mail ballot return, *id*. § 3017(d), unless the voter qualifies as a military or overseas voter under California Elections Code section 3106. *See infra* ¶ 42(C). On its face, Elections Code section 3017(a) does not allow any form of electronic ballot return.

B. **Remote Accessible Vote-by-Mail Systems**: Any California voter may receive, read, and mark their ballot electronically on their own device, such as a personal computer, using their county's RAVBM system. Cal. Elec. Code § 3016.7. These systems are compatible with assistive technology, allowing voters with disabilities to use, for example, a screen reader or a sip-and-puff device to read and/or mark their ballot. While the initial steps of receiving, reading, and marking the ballot are paperless when using a RAVBM system, the final return steps are not. Unless they qualify as a military or overseas voter under California Elections Code section 3106, *see infra* ¶ 42(C), RAVBM voters must print their ballot selections on paper for submission to their elections official. That means submitting a paper printout from the RAVBM system, enclosed in a government-issued paper ballot return envelope, using one of the three methods a voter may use to return a paper vote-by-mail ballot: mail, in-person delivery, or deposit at a ballot drop-off location. The California Secretary of State must certify or conditionally approve an RAVBM system before it can be used in an election in California. Cal. Elec. Code § 19281(a); *see also id.* § 19280 (conditioning certification and approval on fulfillment of statutory requirements and compliance with regulations promulgated by the Secretary of State).

C. **Ballots for Military and Overseas Voters**: Finally, certain military and overseas voters are permitted to return their vote-by-mail ballots electronically by fax. Cal. Elec. Code § 3106. Every California county elections office provides a fax number for this purpose, and Defendant maintains an online list of these fax numbers for voters. The California Secretary of State has authority over aspects of the voting process for military and overseas voters. *See, e.g.*, Cal. Elec. Code § 3101(a) (providing enforcement authority); *id.* § 3101(e) (mandating that Secretary prescribe requirements for "the timely and proper completion of a military or overseas voter's ballot").

43.     The California Elections Code does not restrict the method by which qualifying military and overseas voters may fax their ballots; it states only that they may return their ballot "by facsimile transmission." *Id.* at § 3106(a).

44.     In practice, military and overseas voters already can return their ballots by electronic fax (e-fax) (rather than by using a fax machine) and are doing so. This process involves transmitting an electronic version of the marked ballot to an e-fax service, which faxes the materials to the voter's county elections official. Neither the California Elections Code nor Defendant prohibits this practice, which arguably has become more common as fewer people have access to fax machines and technology continues to shift toward e-faxing.

45.     An electronic fax can be sent to and received by any fax number, including one connected to a fax machine. The recipient of faxed materials that are transmitted by an e-fax service does not itself have to acquire e-fax technology or contract with an e-fax service; no special equipment is required on the receiver's end.

46.     There is generally no obvious distinction on the receiving end between a fax that has been sent electronically and one that has been sent using a fax machine.

47.     Defendant allows qualified military and overseas voters to return their ballots by fax despite any security risks that may exist in connection with that method of ballot return.

48.     The Federal Voting Assistance Program provides a service that accepts emailed ballots from military and overseas voters and then faxes the ballots to the voters' elections officials.[7] The Federal Voting Assistance Program operates in California.

49.     All RAVBM ballots are submitted to county elections officials in paper format or by fax. Regardless of how they are submitted, these RAVBM ballot selections are then transferred onto official paper ballots by county elections officials, a process called "duplication." It is the duplicated ballots that are tabulated by the voting system.

50.     Non-RAVBM ballots returned by fax similarly are duplicated by county elections

---

[7] Federal Voting Assistance Program, *FVAP Resources,*
https://www.fvap.gov/eo/overview/resources (last visited August 29, 2024).

1    officials to ensure the ballot selections can be tabulated. Cal. Elec. Code § 3106(c).

2        51.    When RAVBM was first introduced in California, it was limited to only certain

3    voters (including military and overseas voters and voters with disabilities), and the California

4    Secretary of State required voters to attest under oath that they belonged to one of these two

5    groups as a condition of using RAVBM.

6        52.    Defendant could, if she wished, impose a similar attestation requirement on voters

7    with print disabilities before allowing them to use accessible ballot-return options.

8        53.    Since 2020, California law has required that RAVBM systems be offered in every

9    county to at least certain voters, including voters with disabilities, as part of the Vote-By-Mail

10   Program. The RAVBM systems currently certified or conditionally approved for use in

11   California require voters to print their ballot selections on paper, put the printout in a paper ballot

12   return envelope,[8] seal the envelope, sign the envelope, and return the envelope to the county

13   elections office by mail, by depositing it in a ballot drop box, or by dropping it off in person at

14   the elections office or a voting location.

15       54.    Voters with print disabilities are unable to vote privately and independently using

16   an RAVBM system because they require sighted and/or other physical assistance to perform one

17   or more of the required paper-based steps, such as printing their selections, verifying that the

18   ballot selections printed correctly, putting the printout in the ballot return envelope, and/or

19   sealing, signing, and returning the envelope. Each of these steps presents barriers that force

20   voters with print disabilities to seek assistance from another person, thereby depriving them of

21   their rights to vote privately and independently, even though voters without print disabilities are

22   not similarly required to relinquish these rights.

23

_____

24   [8] California Assembly Bill 626, which was chaptered on October 10, 2023, and became effective
     on January 1, 2024, allows any voter to vote using their vote-by-mail ballot at an in-person
25   voting location without having to use their ballot return envelope. Under new California
     Elections Code section 3016.5, such voters are officially categorized as and effectively acting as
26   *in-person voters*. While some voters with print disabilities may choose to submit their RAVBM
     printouts in person, without a ballot return envelope, pursuant to this new law, such an option
27   does not obviate the accessibility barriers to *voting by mail* that are the subject of this complaint.

28

55.     Thus, although the RAVBM systems certified or conditionally approved for use in California have made receiving, reading, and marking ballots more accessible to some voters with disabilities, including those who can use their own assistive technology—such as a screen reader or a sip-and-puff device—to complete those steps, the return process remains inaccessible to voters with print disabilities who are unable to print, read, and/or handle the RAVBM printout and a paper ballot return envelope[9] without assistance from another person.

56.     Defendant's failure to provide California voters with print disabilities with an accessible vote-by-mail ballot return option "force[s]" many of them "to reveal [their] political opinion[s]" to others, thereby keeping them from "'enjoy[ing] the benefits of' the secret ballot afforded to most other voters." *Cal. Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229, 1239 (N.D. Cal. 2013); *see* Cal. Const. art. II, § 7 (providing that "[v]oting shall be secret"). Thus, these voters are denied access to private and independent voting as compared to other California voters without such disabilities, in violation of federal and state anti-discrimination laws.

57.     As set forth below, Plaintiffs bring claims for violations of title II of the Americans with Disabilities Act ("Title II" or "ADA," as applicable), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*; and section 11135(a) of the California Government Code.

58.     Defendant must comply with Title II, Section 504, and section 11135(a) of the California Government Code by making California's Vote-By-Mail Program accessible to voters with print disabilities.

**IV.     Defendant could remedy this discriminatory exclusion of voters with print disabilities from California's Vote-by-Mail Program but has failed to do so.**

59.     The discriminatory burdens placed on voters with print disabilities outlined above are unlawful, and they could be remedied by existing accessible alternative mechanisms for returning vote-by-mail ballots electronically. The addition of an electronic ballot return (or e-

---

[9] *See supra* note 8.

return) option—which does not require the reading or handling of paper—would allow voters with print disabilities to use their own personal devices, including their own assistive technology, not only to receive, read, and mark their vote-by-mail ballots as they can do with existing RAVBM systems certified or conditionally approved for use in California, but also to review their ballot selections for completeness and accuracy and to transmit their ballots with the full independence and privacy that is afforded to Californians without print disabilities who participate in the Vote-by-Mail Program. Since RAVBM ballots returned in person, through the mail, or through a ballot drop box must already be transcribed by an election official, this would not place an additional burden on election officials.

60.     Defendant could remedy this discriminatory exclusion of voters with print disabilities by providing an electronic ballot return option in one or more of these forms: (1) email; (2) fax; and/or (3) an online portal that is integrated into an RAVBM system. Statistics from the National Conference of State Legislatures (NCSL) indicate that, as of May 2024, thirteen states had extended electronic ballot return options—email, fax, or an online portal—to at least certain voters with disabilities.

61.     First, Defendant could institute an email return option. Defendant would provide guidance and could promulgate regulations for how county elections officials receive and process ballot selections via email. An email return option would not require certification or conditional approval of a new RAVBM system.

62.     Second, Defendant could institute a fax return option. Defendant would provide guidance and could promulgate regulations for how county elections officials receive and process ballots via fax. As mentioned above, California already has an e-return option for certain military and overseas voters, who are permitted to return their ballots via fax, including e-fax. Ballots returned via e-fax by military and overseas voters can be received by any fax machine, and this existing e-return option could be extended to voters with print disabilities without requiring additional infrastructure or certification or conditional approval of a new RAVBM system. Every county in California has a fax number capable of receiving faxed ballots, like the

1    existing process available to military and overseas voters.

2          63.    Third, Defendant could institute an online portal for electronic ballot return that is

3    integrated into a RAVBM system. For this option to be available, Defendant would have to

4    certify or conditionally approve one or more RAVBM systems that include such an online portal.

5    At least four states use Democracy Live's OmniBallot software, which is an RAVBM system

6    that offers an online portal as an e-return option for voters with disabilities. Defendant also

7    would issue guidance and could promulgate regulations regarding use of an RAVBM system

8    with an online portal for electronic ballot return.

9          64.    More than half of California counties currently use a different version of the

10   Democracy Live's RAVBM system, one that does not include an e-return option. According to

11   the vendor, it would be easy to add an e-return option to the version of its RAVBM system that

12   already is used in California (i.e., an option to allow voters with print disabilities to return their

13   ballot selections through an online portal). As mentioned above, this would require Defendant to

14   certify or conditionally approve at least one RAVBM system with an e-return option, which she

15   has the sole authority to do.

16         65.    Additionally, for the three options discussed above, Defendant could provide

17   guidance to county elections officials and regulations on the attestation and signature

18   components.

19         66.    To the extent some accessible form of attestation by voters with print disabilities

20   is deemed necessary in order to limit the use of e-return to this subset of voters, Defendant has

21   previously required voters with disabilities to attest under oath to the existence of their

22   disabilities before using an RAVBM system, and Defendant could adopt a similar requirement as

23   a condition of using any accessible ballot return options.

24         67.    For signatures, Defendant would have numerous options for providing an

25   accessible and electronic signature submission process. The California Elections Code already

26   allows voters to submit their signature electronically in certain circumstances. Military and

27   overseas voters who return their ballot by fax transmit their signature by fax. Some counties use

28

an online application to allow voters to submit their signature electronically when the signature on their vote-by-mail ballot return envelope is missing or is deemed not to match the signature in the voter's file.

68.   Defendant's failure to provide an accessible ballot return option as part of the Vote-by-Mail Program is glaring, given that she has been aware of the Program's inaccessibility to voters with print disabilities for years. In May 2021, at a public event about voters with disabilities, Disability Rights California ("DRC"), co-counsel in this case, notified Defendant and her staff about the barriers posed by the lack of an e-return option. At that time, DRC urged Defendant to certify a RAVBM system that includes an e-return option for voters with print disabilities, and it has continued to do so since, including throughout 2022 and 2023.

69.   Plaintiffs sent a formal demand letter to Defendant on January 19, 2024, reiterating the issues described above and urging Defendant to pursue and implement an e-return option for voters with print disabilities in order to avoid litigation on this matter.

70.   Despite being advised repeatedly of the inaccessibility to voters with print disabilities of the Vote-by-Mail Program, and despite numerous invitations to collaborate in developing a solution, these barriers persist.

**V.      Plaintiffs and their members are irreparably harmed by their discriminatory exclusion from California's Vote-By-Mail Program.**

71.   Plaintiff Christopher Gray wanted to vote in the November 2022 statewide general election using San Francisco's RAVBM system. He would have been able to receive, read, and mark his vote-by-mail ballot electronically using his own assistive technology, including a computer with a screen reader and a Braille display. However, because he is blind, Mr. Gray would not have been able to print and return a RAVBM ballot without assistance—i.e., without sacrificing his right to vote privately and independently. Because of these barriers, Mr. Gray decided to instead vote using the paper vote-by-mail ballot that had been mailed to him by his county elections office. He needed the assistance of another person to read, mark, and return his paper ballot. He could not independently confirm that his paid assistant accurately marked his

1    ballot and submitted it on his behalf. Mr. Gray is a daily user of assistive technology that allows

2    him to independently accomplish a wide variety of tasks, so he would have been able to submit

3    an electronic ballot privately and independently had Defendant made an electronic ballot return

4    option available. Mr. Gray plans to vote in future federal, state, and local elections and would

5    like to do so privately and independently using a RAVBM system. The lack of an accessible

6    electronic ballot return option is therefore an issue of immediate, urgent, and ongoing concern

7    for him.

8           72.     Plaintiff Russell Rawlings voted in 2020 using Sacramento County's RAVBM

9    system. He was able to receive, read, and mark his vote-by-mail ballot electronically using his

10   own assistive technology, including a computer with speech-recognition software. However,

11   because he has cerebral palsy, which limits his manual dexterity, Mr. Rawlings was unable to

12   print and return his RAVBM ballot without assistance—i.e., without sacrificing his right to vote

13   privately and independently. In order to vote using the RAVBM system, he had to ask his

14   caregiver to get the printed ballot from a borrowed printer,[10] put the printout in an envelope, seal

15   the envelope, position the envelope so he could sign it, and mail the completed ballot. Mr.

16   Rawlings felt disempowered by needing to rely on this amount of assistance to submit his ballot.

17   Thus, for the next election, Mr. Rawlings decided that he would rather forgo the option of voting

18   from home, from which so many other voters benefit, and instead vote at an in-person voting

19   location, using an accessible voting machine, which is the only way he is able to vote privately

20   and independently. Voting in person was not without its costs; he had to take time off of work.

21   Mr. Rawlings is a daily user of assistive technology that allows him to independently accomplish

22   a wide variety of tasks, so he would have been able to submit an electronic ballot privately and

23   independently had Defendant made an electronic ballot return option available. Mr. Rawlings has

24   voted consistently since he moved to California in 2001, and he plans to vote in future federal,

25   state, and local elections. He would like to do so privately and independently using a RAVBM

26

27   _____

28   [10] Mr. Rawlings does not own a printer because he cannot handle paper independently.

1   system. The lack of an accessible electronic ballot return option is therefore an issue of

2   immediate, urgent, and ongoing concern for him.

3         73.    Plaintiff Vita Zavoli voted in the November 2022 statewide election using

4   Alameda County's RAVBM system. She was able to receive, read, and mark her vote-by-mail

5   ballot electronically using her own assistive technology, including a computer with a screen

6   reader. However, because of her blindness, she was not able to print and return her RAVBM

7   ballot without assistance—i.e., without sacrificing her right to vote privately and independently.

8   She had to rely on a paid assistant to finalize and return her ballot in paper form for her. Ms.

9   Zavoli is a daily user of assistive technology that allows her to independently accomplish a wide

10  variety of tasks, so she would have been able to submit an electronic ballot privately and

11  independently had Defendant made an electronic ballot return option available. Ms. Zavoli

12  naturalized as a United States citizen several decades ago, and she felt privileged to be given the

13  right to vote when she became a citizen. As a result, she is passionate about voting and is

14  committed to ensuring that she and others have the same access to California's Vote-by-Mail

15  Program as do voters without print disabilities. She plans to vote in future federal, state, and

16  local elections and would like to do so privately and independently using a RAVBM system. The

17  lack of an accessible electronic ballot return option is therefore an issue of immediate, urgent,

18  and ongoing concern for her.

19        74.    Plaintiff CCB has members who, by reason of their disability, have been excluded

20  from participation in and/or have been denied the benefits of the Vote-by-Mail Program and/or

21  have been subjected to discrimination by Defendant in connection with the Program and thus

22  would have standing to sue in their own right. CCB sues on their behalf because the interests of

23  its members that it seeks to protect through this lawsuit are germane to its purpose as an

24  organization and neither the claims asserted nor the relief requested require the participation of

25  individual members in this lawsuit. Thus, CCB has standing to bring this action on behalf of its

26  members. Having an accessible electronic return option for RAVBM ballots would be the only

27  way many of CCB's members could vote privately and independently through the Vote-by-Mail

28

1  Program.

2      75.    Plaintiff NFBCA has members who, by reason of their disability, have been

3  excluded from participation in and/or have been denied the benefits of the Vote-by-Mail

4  Program and/or have been subjected to discrimination by Defendant in connection with the

5  Program and thus would have standing to sue in their own right. NFBCA sues on their behalf

6  because the interests of its members that it seeks to protect through this lawsuit are germane to

7  its purpose as an organization and neither the claims asserted nor the relief requested require the

8  participation of individual members in this lawsuit. Thus, NFBCA has standing to bring this

9  action on behalf of its members. Having an accessible electronic return option for RAVBM

10  ballots would be the only way many of NFBCA's members could vote privately and

11  independently through the Vote-by-Mail Program.

12  **CLAIMS FOR RELIEF**

13  **FIRST CLAIM FOR RELIEF**

14  **VI.**    **Violations of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 _et_**
15          **_seq._)**

16      76.    Plaintiffs incorporate by reference each and every allegation contained in the

17  foregoing paragraphs as if specifically alleged herein.

18      77.    Title II of the ADA provides that "no qualified individual with a disability shall,

19  by reason of such disability, be excluded from participation in or be denied the benefits of the

20  services, programs, or activities of a public entity, or be subjected to discrimination by any such

21  entity." 42 U.S.C. § 12132.

22      78.    Under Title II's implementing regulations, "in providing any aid, benefit, or

23  service," a public entity may not "[a]fford a qualified individual with a disability an opportunity

24  to participate in or benefit from the aid, benefit, or service that is not equal to that afforded

25  others," 28 C.F.R. § 35.130(b)(1)(ii) (2016); "[p]rovide a qualified individual with a disability

26  with an aid, benefit, or service that is not as effective in affording equal opportunity" to "gain the

27  same benefit" as that provided to others, _id_. 35.130(b)(1)(iii); or use "methods of administration .

28

. . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability [or] [t]hat have the . . . effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities," *id*. § 35.130(b)(3)(i)-(ii) (2016).

79.   A public entity "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i) (2016).

80.   Additionally, a public entity "shall take appropriate steps to ensure that communications with . . . participants . . . with disabilities are as effective as communications with others," 28 C.F.R. § 35.160(a)(1) (2011), and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity," *id*. § 35.160(b)(1) (2011). "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities." *Id*. § 35.160(b)(2) (2011). "In order to be effective, auxiliary aids and services must be provided in accessible formats . . . and in such a way as to protect the privacy and independence of the individual with a disability." *Id*. Auxiliary aids and services include "accessible electronic and information technology," "other effective methods of making visually delivered materials available to individuals who are blind or have low vision," and "[a]cquisition or modification of equipment or devices." *Id*. § 35.104 (2016).

81.   State laws cannot be enforced in a way that would violate duly enacted acts of Congress, such as title II of the ADA. *See* U.S. Const., art. VI, cl. 2.

82.   The Vote-By-Mail Program is a service, program, or activity within the meaning of Title II.

83.   Plaintiffs Christopher Gray, Russell Rawlings, and Vita Zavoli are qualified

individuals with disabilities within the meaning of Title II who, by reason of their disability, have been excluded from participation in and/or have been denied the benefits of the Vote-by-Mail Program and/or have been subjected to discrimination by Defendant in connection with the Program, through the Secretary of State's enforcement of California Elections Code sections 3017(a), 303.3, and 19295(a).

84.    Plaintiffs CCB and NFBCA have members who are qualified California voters with disabilities within the meaning of Title II and who, by reason of their disability, have been excluded from participation in and/or have been denied the benefits of the Vote-by-Mail Program and/or have been subjected to discrimination by Defendant in connection with the Program.

85.    As the State of California's chief elections officer, Defendant is the main public entity responsible for violations of the rights of Plaintiffs and their members, as applicable, under Title II and its implementing regulations due to the inaccessibility of the Vote-By-Mail Program to voters with print disabilities.

86.    By failing to provide a vote-by-mail ballot return option that enables California voters with print disabilities to vote privately and independently, Defendant has violated and continues to violate Title II and its implementing regulations, including as follows:

      A. Excluding voters with print disabilities from full participation in the Vote-by-Mail Program by reason of their disabilities.

      B. Denying voters with print disabilities the full benefits of the Vote-by-Mail Program by reason of their disabilities.

      C. Subjecting voters with print disabilities, who wish to vote privately and independently through the Vote-by-Mail Program, to discrimination by reason of their disabilities.

      D. Failing to afford voters with print disabilities an opportunity to participate in or benefit from the Vote-by-Mail Program that is equal to that afforded to voters who do not have print disabilities.

E. Providing voters with print disabilities with a vote-by-mail experience that is not as effective in affording an equal opportunity to gain the same benefit from the Vote-by-Mail Program as that provided to voters who do not have print disabilities.

F. Using methods of administration of the Vote-by-Mail Program that have the effect of subjecting voters with print disabilities to discrimination on the basis of disability.

G. Using methods of administration of the Vote-by-Mail Program that have the effect of defeating or substantially impairing accomplishment of the objectives of the Vote-by-Mail Program with respect to voters with print disabilities.

H. Failing to make reasonable modifications to the Vote-by-Mail Program that are necessary to avoid discriminating against voters with print disabilities on the basis of their disabilities.

I. Failing to ensure that communications with voters with print disabilities who use or wish to use the Vote-by-Mail Program are as effective as communications with voters who do not have print disabilities.

J. Failing to furnish appropriate auxiliary aids and services that are necessary to afford voters with print disabilities an equal opportunity to participate in and enjoy the benefits of the Vote-by-Mail Program as that afforded to voters who do not have print disabilities.

87. A present and actual controversy exists between Plaintiffs and Defendant concerning their rights and respective duties. Plaintiffs contend that Defendant violated their and their members' rights under Title II. Defendant's conduct constitutes ongoing and continuous violations of the ADA. Plaintiffs are informed and believe, and thereon allege, that Defendant denies these allegations. Declaratory relief is, therefore, necessary and appropriate. Accordingly, Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

88. As a result of Defendant's actions and omissions, Plaintiffs and their members, as

1  applicable, have suffered and will continue to suffer irreparable harm. Namely, they have been

2  and will continue to be subjected to discrimination in the Vote-By-Mail Program. No plain,

3  adequate, or complete remedy at law is available to redress the wrongs alleged herein. Injunctive

4  relief is, therefore, necessary to prevent Defendant from continuing to deny Plaintiffs and their

5  members, as applicable, their right to vote privately and independently through the Vote-by-Mail

6  Program in upcoming elections, including but not limited to the November 5, 2024, presidential

7  general election.

8      89.    Plaintiffs are entitled to declaratory and injunctive relief and to reasonable

9  attorneys' fees and costs.

10                        **SECOND CLAIM FOR RELIEF**

11  **VII.    Violations of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 _et_**

12  **_seq._)**

13      90.    Plaintiffs incorporate by reference all allegations contained in the preceding

14  paragraphs as if specifically alleged herein.

15      91.    Section 504 provides, in relevant part, that "[n]o otherwise qualified individual

16  with a disability . . . shall, solely by reason of her or his disability, be excluded from the

17  participation in, be denied the benefits of, or be subjected to discrimination under any program or

18  activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

19      92.    Section 504 defines "program or activity" to include "all of the operations" of (1)

20  a department or agency of a state or local government or (2) "the entity of such State or local

21  government that distributes such assistance and each such department or agency (and each other

22  State or local government entity) to which the assistance is extended, in the case of assistance to

23  a State or local government." 29 U.S.C. § 794(b)(1).

24      93.    State laws cannot be enforced in a way that would violate duly enacted acts of

25  Congress, such as Section 504 of the Rehabilitation Act of 1973. _See_ U.S. Const., art. VI, cl. 2.

26      94.    The Vote-By-Mail Program is a program or activity within the meaning of

27  Section 504.

28

95.     Plaintiffs Christopher Gray, Russell Rawlings, and Vita Zavoli are qualified individuals with disabilities within the meaning of Section 504, as are many members of Plaintiffs CCB and NFBCA.

96.     Defendant receives federal funds through the United States Election Assistance Commission for use in elections programs and activities, including the Vote-by-Mail Program.

97.     Defendant's acts and omissions, including Defendant's enforcement of California Elections Code sections 3017(a), 303.3, and 19295(a), that violate the rights of Plaintiffs and their members, as applicable, under Title II (*see supra* § VI) also violate their rights under Section 504. 28 C.F.R. § 42.503 (2003).

98.     Defendant's acts and omissions discriminate against Plaintiffs and their members, as applicable, based solely on their disabilities.

99.     A present and actual controversy exists between Plaintiffs and Defendant concerning their rights and respective duties. Plaintiffs contend that Defendant violated their and their members' rights under Section 504. Plaintiffs are informed and believe, and thereon allege, that Defendant denies these allegations. Declaratory relief is therefore necessary and appropriate. Accordingly, Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

100.     As a result of Defendants' acts and omissions, Plaintiffs and their members, as applicable, have suffered and will continue to suffer from discrimination and unequal access to the Vote-By-Mail Program. No plain, adequate, or complete remedy at law is available to redress the wrongs alleged herein. Injunctive relief is thus necessary to prevent Defendant from denying Plaintiffs and their members, as applicable, their right to vote privately and independently through the Vote-by-Mail Program in upcoming elections, including but not limited to the November 5, 2024, presidential general election.

101.     Plaintiffs are entitled to declaratory and injunctive relief and to reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

1

## VIII.    Violations of California Government Code section 11135 *et seq*.

2      102.    Plaintiffs incorporate by reference all allegations contained in the preceding

3  paragraphs as if specifically alleged herein.

4      103.    California Government Code section 11135 and the regulations promulgated

5  thereunder prohibit discrimination against people with disabilities or denial of full and equal

6  access to the benefits of state-funded programs and activities. Section 11135(a) provides, in

7  pertinent part, as follows:

8      No person in the State of California shall, on the basis of . . . disability . . . be
       unlawfully denied full and equal access to the benefits of, or be unlawfully

9      subjected to discrimination under, any program or activity that is conducted,
       operated, or administered by the state or by any state agency, is funded directly by

10     the state, or receives any financial assistance from the state.

11     104.    California Government Code section 11135 incorporates title II of the Americans

12  with Disabilities Act ("ADA") and its implementing regulations. Cal. Gov't. Code § 11135(b).

13     105.    At all relevant times, the Vote-by-Mail Program has been a program or activity of

14  which key aspects have been conducted, operated, or administered by Defendant.

15     106.    At all relevant times, the Vote-by-Mail Program has been a program or activity

16  that has been funded directly by the State or received substantial state financial assistance.

17     107.    By violating the ADA as alleged in Plaintiffs' first claim for relief above,

18  Defendant has unlawfully denied Plaintiffs and their members, as applicable, full and equal

19  access to the benefits of the Vote-by-Mail Program and/or unlawfully discriminated against

20  Plaintiffs and their members, as applicable, under the Vote-by-Mail Program on the basis of their

21  disabilities, in violation of Government Code section 11135 and the regulations promulgated

22  thereunder.

23     108.    A present and actual controversy exists between Plaintiffs and Defendant

24  concerning their rights and respective duties. Plaintiffs contend that Defendant violated their and

25  their members' rights under California Government Code section 11135. Plaintiffs are informed

26  and believe, and thereon allege, that Defendant denies these allegations. Declaratory relief is,

27  therefore, necessary and appropriate. Accordingly, Plaintiffs seek a judicial declaration of the

28

1   rights and duties of the respective parties.

2       109.    As a direct and proximate result of Defendant's violations of California

3   Government Code section 11135, Plaintiffs and their members, as applicable, have suffered and

4   will continue to suffer irreparable harm for which they have no adequate remedy at law.

5   Injunctive relief is, therefore, necessary to prevent Defendant from continuing to deny Plaintiffs

6   and their members, as applicable, their right to vote privately and independently through the

7   Vote-by-Mail Program in upcoming elections, including but not limited to the November 5,

8   2024, presidential general election.

9       110.    Because Defendant's discriminatory conduct is ongoing, declaratory and

10  injunctive relief are appropriate. Plaintiffs are further entitled to reasonable attorneys' fees and

11  costs.

12                          **PRAYER FOR RELIEF**

13  WHEREFORE, Plaintiffs request that the Court provide the following relief:

14      111.    A judicial declaration that Defendant has violated and continues to violate the

15  rights of California voters with print disabilities under Title II of the ADA, Section 504 of the

16  Rehabilitation Act, and section 11135 of the California Government Code, because California's

17  Vote-by-Mail Program does not include a ballot return option that is accessible to them, thereby

18  denying them meaningful and equal access to the benefits of that Program.

19      112.    A judicial declaration that, to remedy the above-described discrimination against

20  voters with print disabilities, Defendant must reasonably modify the Vote-by-Mail Program by

21  providing a ballot return option that is accessible to them, and Defendant must do this

22  notwithstanding the following provisions of the California Elections Code, as well as any other

23  state statutes or regulations Defendant may argue would otherwise prevent that relief:

24              A.  California Elections Code section 3017(a), which prescribes the methods of

25                  vote-by-mail ballot return and does not include an express electronic ballot

26                  return option for voters with print disabilities;

27              B.  California Elections Code section 303.3, which defines an RAVBM system as

28

being "for the sole purpose of marking an electronic vote by mail ballot for a voter who shall print the paper cast vote record to be submitted to the elections official" and which thus, on its face, does not allow an RAVBM system to be used for electronic ballot return by voters with print disabilities; and

C. California Elections Code section 19295(a), which prohibits an RAVBM system from transmitting ballot selections over the internet and thus, on its face, precludes the possibility of electronic ballot return through an RAVBM system for voters with print disabilities.

113.    Injunctive relief requiring Defendant to ensure that voters with print disabilities have meaningful and equal access to the Vote-by-Mail Program, including relief requiring Defendant to take the following specific actions:

A. Instruct county elections officials that they must allow voters with print disabilities to return their vote-by-mail ballots via an accessible electronic method, which must include at least one of the following methods:

    i.   Email;

    ii.  Fax;

    iii. Online portal, which would require Defendant to certify or conditionally approve one or more RAVBM systems that include an accessible option that allows voters with print disabilities to return their ballots privately and independently; or

    iv.  Any other method(s) by which voters with print disabilities who rely on assistive technology are able to electronically return their ballots privately and independently.

B. Make available to voters with print disabilities accessible electronic ballot return procedures, including an accessible method to attest to their status as qualified voters with print disabilities and accessible procedures for submitting their signature.

1     C. Notify county elections officials of the injunctive relief order through an

2       advisory memorandum to all county clerks and registrars of voters ("CC/ROV

3       memorandum").

4     D. Issue any other necessary guidance to county elections officials through one or

5       more CC/ROV memoranda.

6     E. Monitor individual counties' provision of accessible electronic vote-by-mail

7       ballot return methods and procedures in accordance with this Court's order, as

8       part of Defendant's monitoring and enforcement activities pursuant to

9       Government Code section 12172.5.

10  114. An award of Plaintiffs' reasonable attorneys' fees and costs.

11  115. Such other relief as the Court deems just and proper.

DATED: August 30, 2024                Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

/s/ Sean Betouliere
Sean Betouliere (SBN 308645)
Shawna L. Parks (SBN 208301)
Rosa Lee Bichell (SBN 331530)
**DISABILITY RIGHTS ADVOCATES**
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Tel:     (510) 665-8644
Fax:     (510) 665-8511
Emails: sbetouliere@dralegal.org
              sparks@dralegal.org
              rbichell@dralegal.org


DISABILITY RIGHTS CALIFORNIA

/s/ Frederick P. Nisen
Frederick P. Nisen (SBN 184089)
Karie Lew (SBN 234666)
**DISABILITY RIGHTS CALIFORNIA**
1831 K Street
Sacramento, CA 95811-4114
Tel: (916) 504-5800
Fax: (916) 504-5801
Emails: fred.nisen@disabilityrightsca.org
              karie.lew@disabilityrightsca.org

Lili V. Graham (SBN 284264)
Andrea Rodriguez (SBN 290169)
Paul R. Spencer (SBN 292767)
**DISABILITY RIGHTS CALIFORNIA**
530 B Street, Suite 400
San Diego, CA 92101-4426
Tel: (619) 239-7861
Fax: (619) 239-7906
Emails:  lili.graham@disabilityrightsca.org
              andrea.rodriguez@disabilityrightsca.org
              paul.spencer@disabilityrightsca.org

BROWN, GOLDSTEIN & LEVY LLP

/s/ Eve Hill
Eve Hill (SBN 202178)
Neel Lalchandani (SBN 310480)
Lauren J. Kelleher*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BROWN, GOLDSTEIN & LEVY LLP**
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202-1633
Tel: (410) 962-1030
Fax: (410) 385-0869
Emails:  ehill@browngold.com
          nkl@browngold.com
          lkelleher@browngold.com

*Pro Hac Vice*

Attorneys for Plaintiffs