United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA COUNCIL OF THE BLIND, et al.,

Plaintiffs,

v.

SHIRLEY N. WEBER,

Defendant.

Case No. 24-cv-01447-SK

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY**

Regarding Docket Nos. 148, 149, 151, 152, 155, 165, 166

This matter comes before the Court upon consideration of the motion for summary judgment filed by Plaintiffs Christopher Gray, Vita Zavoli, Russel Dawson Rawlings, California Council of the Blind, and National Federation of the Blind of California (collectively, "Plaintiffs"), the cross-motion for summary judgment filed by Defendant California Secretary of State Shirley N. Weber ("Secretary" or "Defendant"), and the motion to exclude expert testimony filed by Defendant. Having carefully considered the parties' papers, relevant legal authority, the record in the case, and having had the benefit of oral argument, the Court hereby: (1) GRANTS IN PART Plaintiff's motion and DENIES IN PART Defendant's cross-motion as to the merits, (2) RESERVES RULING on the remedy portion of the cross-motions for summary judgment, and (3) DENIES Defendant's motion to exclude expert testimony for the reasons set forth below.

The Court GRANTS Plaintiffs' requests for judicial notice pursuant to Federal Rule of Evidence 201. (Dkt. Nos. 149, 155.)

**BACKGROUND**

The parties are both moving for summary judgment on Plaintiffs' claims under Title II of the Americans with Disabilities Act ("Title II" or "ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and California Government Code § 11135 ("Section 11135").

United States District Court
Northern District of California

The following facts are not disputed. Plaintiffs Gray, Zavoli, and Dawson Rawlings are individuals with print disabilities and organizations that represent individuals with print disabilities. Print disabilities are "disabilities that prevent a voter from reading, marking, holding, handling, and/or manipulating a paper ballot privately and independently." (Dkt. No. 111 (Second Amended Compl. ("SAC")), ¶ 2.) The individual Plaintiffs Gray, Zavoli, and Dawson Rawlings are qualified individuals with disabilities within the meaning of the ADA, Section 504, and Section 11135. (Dkt. No. 148-2, Ex. 1 (Joint Stipulation and Order Regarding Defendant's Affirmative Defenses and Related Discovery ("Joint Stip.")) at ¶ 7(d).) The organizational Plaintiffs California Council of the Blind and National Federation of the Blind of California, are membership associations with members who are qualified individuals with disabilities within the meaning of the ADA, Section 504, and Section 11135. (*Id*. at ¶ 7(f).)

Currently, in California, all registered voters may vote by mail. *See* Cal. Elec. Code § 3003 ("The vote by mail ballot shall be available to any registered voter.") Individuals with print disabilities may receive, review, and mark their vote-by-mail ballots electronically on their own devices, such as a personal computer, using a remote accessible vote-by-mail ("RAVBM") system that has been certified or conditionally approved by the Secretary. *See* California Elections Code § 3016.7. However, voters may not return ballots marked using a RAVBM system electronically. (Dkt. No. 123 (Defendant's Answer to SAC) at ¶ 7.) Instead, except for the option to return a ballot via facsimile, which is available to certain military voters and voters who live in other countries, voters in California must "print their ballots, place those ballots in an envelope, sign and seal the envelope, and then arrange for return of the paper ballot through a non-electronic means." (*Id*. at ¶¶ 7, 52; *see also* Dkt. No. 148-5, Ex. 4 (Defendant's Responses to Plaintiffs' Requests for Admissions Set One) at No. 1 (admitting that "voters utilizing an RAVBM system . . . must cause their ballot selections to be printed on paper, put the printed paper cast vote record into an envelope, seal the envelope, sign (or mark or affix a signature stamp pursuant to California Elections Code section 354.5) the envelope, and submit the envelope containing the paper case vote record to the country elections office."). Presently, no one is authorized to return a ballot electronically in California. (Dkt. No. 123 at ¶ 7 (admitting that California's Elections Code does

not permit any voter to return a ballot marked using a RAVBM system electronically).)

Many voters with print disabilities need assistance to print and return their ballots. Many voters with visual impairments may not have a printer because they do not have a need for one. (Dkt. No. 148-8 (Deposition of Susan Lapsley attached as Exhibit 7) at 39:3-9.) Moreover, printers are not an item that persons with visual impairments typically use regularly, and they typically would need assistance to get a printer. Even if they had a printer, persons with visual impairments would need assistance to ensure the ballot printed correctly, to put the ballot into the envelope, and to mail it. (*Id*. at 39:11-18; *see also* Dkt. No. 148-13 (Declaration of Christopher Gray attached as Exhibit 12) at ¶ 5 (Gray does not own a printer because "print documents aren't accessible to [him].").) Voters with mobility issues would have similar difficulties in printing and mailing their paper ballot without assistance. (Dkt. No. 148-8 at 39:19-40:1.) The Disability Rights California's voting hotline for 2020 received calls from people stating that they were unable to vote privately and independently even with an RAVBM system, either because they did not own a printer or could not manipulate a printout into an envelope without assistance. If someone assisted a voter with disabilities, that person could then review the voter's selections and decide whether or not to return the ballot. (*Id*. at 70:18-71:4.)

Plaintiff Zavoli testified that she asks someone to check the printed form with her ballot selections to ensure that it is aligned and printed correctly with enough ink to be legible and that she signed in the correct location. (Dkt. No. 148-11 (Deposition of Vita Zavoli attached as Exhibit 10) at 38:18-41:5, 47:13-21, 58:7-59:3.) Zavoli further testified that she does not know the political affiliations of her assistant, but she does not have a choice to fill out and submit her ballot independently. (*Id*. at 41:22-42:7.) Zavoli has a signature stamp, but she has not registered or used it to sign her ballot, and even if she did, she would still be concerned if the stamped signature came out properly. (*Id*. at 51:15-52:15.)

Plaintiff Gray similarly has someone assist his with his ballot. (Dkt. No. 148-12 (Deposition of Christopher Gray attached as Exhibit 11) at 27:1-11; *see also* Dkt. No. 148-13 (Gray Decl.) at ¶ 4.) He hires assistants to help him, but they usually only stay for about nine months, and he is then required to fine a new assistant. (Dkt. No. 148-12 at 28:4-22.) Even with

assistance to identify where he needs to sign, he has difficultly signing consistently along a signature line that would match the signature on his government identification. (*Id*. at 3:5-19.) Gray has a signature stamp, but he would not independently be able to ensure the ink levels on the stamp. (*Id*. at 90:20-25.) If he were to use his signature stamp, he also needs assistance to ensure that the stamp was aligned correctly. (*Id*. at 91:4-11.)

Plaintiff Dawson Rawlings needs assistance to print and return his ballot selections. (Dkt. No. 148-14 (Deposition of Russel Dawson Rawlings attached as Exhibit 13) at 30:21-31:3.) In 2020, he had to send his form to a commercial print shop, such as FedEx or Kinko's, for printing. (*Id*. at 32:2-9.) Dawson Rawlings' roommate, who was also acting as his assistant, then retrieved Dawson Rawlings' printed vote selections from the print shop. (*Id*. at 33:14-18.) The roommate also assisted Dawson Rawlings with placing the printed copy in the envelope because Dawson Rawlings cannot perform that step independently. (*Id*. at 38:17-39:1.) He also needs assistance to sign the envelope. (*Id*. at 39:15-20.) Dawson Rawlings has cerebral palsy, which limits his manual dexterity in his hands. (Dkt. No. 148-16 (Declaration of Russel Dawson Rawlings attached as Exhibit 15) at ¶ 4.) He had a signature stamp, but he does not want to replace it because it could be compromised. (Dkt. No. 148-14 at 75:18-76:2.)

Defendant admits that "some voters with print disabilities may require assistance from another person to return their vote-by-mail ballots. . . ." (Dkt. No. 148-5, Ex. 4 at No. 29.)

The Secretary's office is a public entity under the ADA, Section 504, and California Government Code § 11135. (Dkt. No. 148-2, Ex. 1 at ¶ 7(a).) The Secretary is California's chief elections officer. (*Id*. at ¶ 7(b).) The Secretary and the Vote-by-Mail Program receive federal and state funding. (*Id*. at ¶ 7(c).) California's Vote-by-Mail Program is a program or activity subject to Title II and Section 504. (Dkt. No. 148-3, Ex. 2 (Second Amended Compl. ("SAC")) at ¶¶ 90, 102; Dkt. No. 148-4, Ex. 3 (Defendant's Answer) at ¶¶ 90, 102 (admitting these paragraphs).)

Defendant waived her affirmative defenses of fundamental alteration and undue burden. (Dkt. No. 148-2. Ex. 1 (Joint Stip.) at ¶ 1.) Defendant has also waived her affirmative defenses related to the impact of Plaintiffs' requested relief on election security, the cost of administering elections, the resources of Defendant's office and/or county elections offices, or public confidence

in the integrity of the State's elections and results. (*Id.*) Defendant has, therefore, stipulated that she:

> will not challenge (1) the effectiveness or feasibility of providing an accessible method for California voters with print disabilities to electronically submit their ballot selections to elections officials, and (2) the effectiveness or feasibility of providing an accessible electronic method to satisfy other requirements accompanying vote-by-mail ballot return (including related to voter signatures and any attestation, as set forth in paragraph 121(D) of Plaintiffs' [Second Amended Complaint]).

(*Id.*)

At the hearing, the parties confirmed that the material facts are not disputed. Instead, the sole dispute is the legal question of whether the requirement to print and return a paper copy of ballots prepared by the RAVBM systems meaningfully denies Plaintiffs the benefits of California's vote by mail program.

## ANALYSIS

### A. Cross-Motions for Summary Judgment

#### 1. Applicable Legal Standard on Motion for Summary Judgment.

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of

United States District Court
Northern District of California

persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**2. The Parties' Cross-Motions for Summary Judgment.**

Title II of the ADA and Section 504 of the Rehabilitation Act are similar in purpose and scope. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

To demonstrate a claim under Title II of the ADA:

> a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise

> discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (citations, quotation marks, and emphasis omitted). Similarly, to demonstrate a claim under Section 504 of the Rehabilitation Act:

> a plaintiff must show: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

*Id*. (citations, quotation marks, and emphasis omitted). The parties acknowledge the similarity of these two statutes and address them together. In addition, the parties agree that a violation of Title II of the ADA and/or Section 504 of the Rehabilitation Act would also amount to a violation of Section 11135. (Dkt. No. 148 at p. 1; Dkt. No. 151 at p. 10.) *See also* Cal. Govt. Code § 11135(b) (stating that it incorporates the protections and prohibitions of the ADA and its implementing regulations). The Court will therefore address Plaintiffs' three claims together.

As noted above, Defendant does not dispute that the Individual Plaintiffs are qualified people with disabilities and does not dispute that the Group Plaintiffs represent qualified people with disabilities. Nor do the parties dispute that the program at issue is California's vote by mail program. Instead, the dispute is whether California's requirements for the vote by mail program, which requires an individual using an RAVBM system to print out and return a paper copy and sign the return envelope, denies Plaintiffs the benefits of the right to vote by mail due to their print disabilities. As noted above, Defendant has waived the affirmative defenses of fundamental change and undue burden. Thus, if Plaintiffs demonstrate a violation of these statutes by showing they are denied meaningful access to the right to vote through the vote by mail program, then the Court's analysis on the merits ends. Thus, the issue before the Court is quite narrow – whether the vote by mail program discriminates against Plaintiffs because they cannot return their ballots without assistance.

In *Alexander v. Choate*, the Supreme Court held that Section 504 of the Rehabilitation Act "requires that an otherwise qualified handicapped individual must be provided with *meaningful access* to the benefit" that the public entity offers. 469 U.S. 287, 301 (1985) (emphasis added).

United States District Court
Northern District of California

The Ninth Circuit has applied the Supreme Court's construction of Section 504 to ADA Title II cases. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013). Therefore, the Court must determine whether Plaintiffs' inability to print, sign, and return their ballots without assistance meaningfully denies them access to the benefits of the vote by mail program.

The Ninth Circuit has also made clear that courts are guided by the relevant regulations when evaluating the meaningful access requirement. *Id.*; *see also California Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1236 (N.D. Cal. 2013) ("when considering the "meaningful access requirement," courts in the Ninth Circuit are guided by the specific implementing regulations of the ADA") (citing *K.M.*, 725 F.3d at 1102).

Most relevant to this litigation is the "so-called 'effective communications regulation,' which spells out public entities' communications-related duties towards those with disabilities." *K.M.*, 725 F.3d at 1096 (citing 28 C.F.R. § 35.160). As the Ninth Circuit summarized:

> The Title II effective communications regulation states two requirements: First, public entities must "take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." *Id.* § 35.160(a). Second, public entities must "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." *Id.* § 35.160(b)(1). . . . . "In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities." *Id.* § 35.160(b)(2).

*Id*. In addition, this regulation specifies that "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as *to protect the privacy and independence* of the individual with a disability." 28 C.F.R. § 35.160(b)(2) (emphasis added).

Moreover, many of the courts construing meaningful access to and limitations on voting have held that "one of the central features of voting, and one of its benefits, is voting privately and independently." *California Council of the Blind*, 985 F. Supp. 2d at 1238; *see also Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 199 (2d Cir. 2014) (holding that the

opportunity to fully participate in the board of elections' voting program "includes the option to cast a private ballot on election days" and that blind voters lacked meaningful access to the program of voting because accommodations did not allow them to cast ballots in private, which was core to the voting program); *Nat'l Fed'n of the Blind, Inc. v. Lamone*, 2014 WL 4388342, at *11-12 (D. Md. Sept. 4, 2014) (holding that the right to vote includes the right to do so independently and privately); *Disability Rights Wisconsin, et al. v. Wisconsin Elections Commission, et al.*, Case No. 2024-cv-001141 (Wisconsin Circuit Court August 4, 2026) (attached as Ex. 1 to Notice of Recent Authority); *cf. Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383, 400 (D. Md. 2021) (distinguishing what is required to provide effective communication in a retail transaction from "circumstances with heightened expectations of privacy", such as voting).

As the Second Circuit noted, relegating persons with disabilities to voting "with the fortuitous assistance of others" is contrary to the purpose of the Rehabilitation Act, which is 'to empower individuals with disabilities to maximize employment, economic self-sufficiency, *independence,* and inclusion and integration into society.'" *Disabled in Action*, 752 F.3d at 200 (quoting 29 U.S.C. § 701(b)(1) (emphasis added by Second Circuit); *see also Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1269 (D.C. Cir. 2008) (requiring mobility-impaired people to rely on the assistance of others "is anathema to the stated purpose of the Rehabilitation Act"). The Second Circuit made clear that "[t]he right to vote should not be contingent on the happenstance that others are available to help." 752 F.3d at 200; *see also Nat'l Fed'n of the Blind*, 813 F.3d at 507 (holding "by effectively requiring disabled individuals to rely on the assistance of others to vote absentee, defendants have not provided plaintiffs with meaningful access to Maryland's absentee voting program."); *Cal. Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229, 1239 (N.D. Cal. 2013).

In finding that the right to vote includes the right to vote privately, the court in *California Council of the Blind* reasoned that in the United States "most voters at the polls cast their ballots in private, without threat of interference by poll workers, the government, or curious onlookers." *Cal. Council of the Blind*, 985 F. Supp. 2d at 1238. Moreover, "[t]he provision and maintenance

of voting systems that allow for such privacy is "a normal function of a government entity." *Id*. (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)). The court noted that every state in this country has employed use of the secret ballot since the early part of the Twentieth Century. *Id*. The court found that "requiring blind and visually impaired individuals to vote with the assistance of a third party, if they are to vote at all, at best provides these individuals with an inferior voting experience 'not equal to that afforded others.'" *Id*. at 1239 (quoting 28 C.F.R. § 35.130(b)(1)(ii)). Those "[b]lind and visually impaired voters are forced to reveal a political opinion that others are not required to disclose." *Id*.

The Court finds the reasoning of these cases persuasive. Significantly, the Court notes that the California Constitution provides that "voting shall be secret." Cal. Const. art. II, § 7; *Cf. Hernandez v. New York State Bd. of Elections*, 479 F. Supp. 3d 1, 17 (S.D.N.Y. Aug. 14, 2020) (noting that "[s]ince 1895, [the New York] Constitution has specifically provided that, whether voting is by ballot or another method prescribed by law, 'secrecy in voting be preserved.'" (quoting *Kosmider v. Whitney*, 132 N.E.3d 592, 602 (quoting N.Y. Const. Art. II, § 7)). In addition, although the United States Supreme Court has not recognized a constitutional right to vote in private, it has called it "necessary to cure electoral abuses". *Id*. (quoting *Burson v. Freeman*, 504 U.S. 191, 207 (1992)). Requiring assistance from another person to complete the voting process is antithetical to voting in secret.

Given this constitutional provision, the effective communications regulation, and the persuasive authority finding that meaningful access to voting includes the right to vote privately and secretly, the Court concurs and finds that meaningful access to the vote by mail program includes the right to do so privately and secretly. Requiring assistance from another person to complete the voting by mail process is antithetical voting privately and secretly. Due to their print disabilities, Plaintiffs are not able to print, sign, and return their ballots in paper form without assistance from another person. (Dkt. No. 148-11 (Zavoli Depo.) at 38:18-41:5, 41:22-42:7, 47:13-21, 51:15-52:15, 58:7-59:3; Dkt. No. 148-12 (Gray Depo.) at 3:5-19, 27:1-11, 28:4-22, 90:20-25, 91:4-11; Dkt. No. 148-13 (Gray Decl.) at ¶ 4; Dkt. No. 148-14 (Dawson Rawlings Depo.) at 30:21-31:3, 32:2-9; 33:14-18, 38:17-39:1; 39:15-20, 75:18-76:2; Dkt. No. 148-16

(Dawson Rawlings Decl.) at ¶ 4.)

Defendant's arguments to the contrary are not persuasive. First, relying on a provision from the Voting Rights Act, Defendant argues that federal law governing voting rights makes clear that the right to assistance from a person of the voter's choosing renders the right to vote meaningful. (Dkt. No. 151 at 11.) The Voting Rights Act authorizes voters who need "assistance to vote by reason of blindness, disability, or inability to write or read" are authorized to receive assistance from the person of their choice. *See* 52 U.S.C. § 10508. Defendant argues that Congress has, thus, determined that receiving assistance from a person of their choice is sufficient to provide meaningful access to the right to vote. (Dkt. No. 151 at 12 (citing *Rissling v. Bobo*, 2026 WL 797138, at *11-13 (N.D. Ala. Mar. 20, 2026). In *Rissling*, the court reviewed the legislative history of the Voting Rights Act noting that it was designed to address the problem of states limiting who could assist disabled voters. From that, the court concluded that the Voting Rights Act was the comprehensive statute addressing disability discrimination in voting and thus limited the ability of the ADA as a general anti-discrimination statute to address discrimination in voting. *Rissling*, 2026 WL 797138, at *11-12. The Court disagrees. There is a significant difference between *authorizing* voters to select the people of their choice to assist with voting and *requiring* assistance to complete the voting process. Moreover, the fact that the Voting Rights Act addressed one aspect of discrimination in voting does not mean that the ADA and the Rehabilitation Act cannot be used to prohibit further discrimination in voting. Notably, the provision addressing assistance in voting was added to the Voting Rights Act in 1982. *See* 52 U.S.C. § 10508. If the Voting Rights Act set the ceiling on how to address discrimination with respect to voting for people with disabilities, then courts would not be able to consider technological advances in determining what was reasonable. *Cf. Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) (holding courts must "take into account evolving technology that might make it cheaper and easier to ameliorate the plight of the disabled" when determining what reasonable accommodations were required under Title III of the ADA).

Second, Defendant cites cases that determined that neither the ADA nor the Rehabilitation Act require accommodating persons with disabilities to vote privately and independently. *Taylor*

*v. Onorato,* 428 F. Supp. 2d 384, 388 (W.D. Pa. 2006); *American Ass'n of People with Disabilities v. Shelley,* 324 F. Supp. 2d 1120, 1126 (C.D. Cal. 2004) ("Nothing in the Americans with Disabilities Act or its Regulations reflects an intention on the part of Congress to require secret, independent voting."); *Nelson v. Miller*, 950 F. Supp. 201, 205 (W.D. Mich. 1996) (holding neither the ADA nor the Rehabilitation Act "should be read so broadly" as to require a right to a secret ballot), *aff'd on other grounds*, 170 F.3d 641 (6th Cir. 1999); *Rissling*, 2026 WL 797138 at *13 (finding ADA does not require ballot secrecy because neither the statute or regulations specifically "mention privacy in voting, secrecy of the ballot, or the right of a disabled voter to cast a ballot without assistance"). However, as another court observed, the ADA and the Rehabilitation Act do not provide "a set of freestanding rights, such as the right to vote, or the right to vote independently". *California Council of the Blind*, 985 F. Supp. 2d 1229, 1242. Instead, these statutes require reasonable accommodations to provide persons with disabilities meaningful access to services, programs and activities, so long as those modifications do not constitute an undue burden or fundamentally alter the nature of such program or activity. *California Council of the Blind*, 985 F. Supp. 2d 1229, 1242; *see also Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016) ("This case does not turn on whether there is a standalone right to vote privately and independently without assistance. Plaintiffs' argument is that defendants have provided such a benefit to non-disabled voters while denying that same benefit to plaintiffs on the basis of their disability. This is precisely the sort of harm the ADA seeks to prevent.")

Notably, except for *Rissling*, all of these cases were decided before the relevant "effective communications" regulation became effective in 2011, which requires "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1). This regulation further specifies that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R. § 35.160(b)(2). It also specifies that "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a

timely manner, and in such a way as *to protect the privacy and independence* of the individual with a disability." *Id.* (emphasis added); *see also Nat'l Fed'n of the Blind, Inc. v. Lamone*, 2014 WL 4388342, at *11 (D. Md. Sept. 4, 2014) (finding *Taylor*, *Shelley*, *Nelson* "of limited relevance" because they predate this regulation). Although the court in *Rissling* was decided after the effective communications regulation became effective, the court fails to address this regulation in any manner.

Defendant attempts unsuccessfully to distinguish the effective communications regulation. Defendant argues that the effective communications regulation cannot require more than meaningful access under the ADA. (Dkt. No. 151 at p. 16.) While true, Defendant fails to address how the effective communications regulation informs the meaning of "meaningful access" to the vote by mail program. Defendant simply argues, without considering the impact of the effective communications regulation on the right to vote by mail, that meaningful access does not require allowing Plaintiffs to vote remotely privately and independently. Then, based on its construction of "meaningful access", Defendant argues that the effective communications regulation cannot require "equal access" to remote voting, such as voting privately and independently. (*Id.*) Such circular reasoning is not effective or persuasive.

Third, Defendant argues that this California Constitutional provision requiring voting in secret "coexists harmoniously with federal and state law allowing voting assistance from a person of a voter's choice." (Dkt. No. 151 at p. 13 (citing 52 U.S.C. § 10508 (Voting Rights Act allowing voters' assistance from persons of their choice) and Cal. Elec. Code § 14282 (similar California provision).) However, allowing assistance is quite different from requiring assistance to complete the voting process. Allowing a voters with disabilities to select people of their choice to assist them does not render that process secret or private. It is merely a method of supporting individuals who have someone with whom they are comfortable and whom they trust to assist them with voting. Not everyone is in that position, and people with disabilities should not be required to rely on someone else to assist them with voting. *Disabled in Action*, 752 F.3d at 200. To the extent other courts have found similar state constitutional provisions enshrining secrecy in voting to be consistent with voting programs requiring some people to use assistance to vote, the

Court finds such cases unpersuasive. The courts failed to cogently explain how they coexist harmoniously. *Rissling*, 2026 WL 797138, at *13 (dismissing statute providing right to vote secretly in light of statute permitting assistance and failing to explain how requiring assistance was not problematic); *Am. Ass'n of People With Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1287 (M.D. Fla. 2002) (finding meaning of Florida constitutional provision requiring "direct and secret vote" ambiguous and was satisfied by statute allowing for assistance in voting); *Nelson v. Miller*, 170 F.3d 641, 650-52 (6th Cir. 1999) (finding Michigan constitutional provision requiring legislature to "enact laws . . . to preserve the secrecy of the ballot" as consistent with statutory provision allowing for assistance in voting).

Fourth, Defendant argues that no other court has held that the ADA or Rehabilitation Act requires electronic ballot returns as opposed to casting votes through a RAVBM system. However, notably, in none of those cases were the plaintiffs seeking electronic returns. Therefore, none of those cases stand for the proposition that electronic returns are not necessary to provide persons with print disabilities meaningful access to the vote by mail program. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (where an issue was neither "raised in briefs or argument nor discussed in the opinion of the [c]ourt," there is no "binding precedent on th[e] point"); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) (where an "issue was never raised or discussed[, s]uch unstated assumptions on non-litigated issues are not precedential holdings binding future decisions."); *Matter of Baker,* 693 F.2d 925, 925-26 (9th Cir.1982) (prior case found not to have established controlling precedent on issue before the court since the question at issue was neither contested nor ruled upon in that case).

Fifth, Defendants argue that, because Plaintiffs can complete "the vast majority of the vote-by-mail process", Plaintiffs have meaningful access to the program. (Dkt. No. 151 at p. 19.) According to Defendants, Plaintiffs' ability to register to vote and to receive and mark their ballots unassisted is sufficient. (Dkt. No. 151 at p. 18 ("Plaintiffs' meaningful access to California's vote-

by-mail system is evidenced in their ability to complete voter registration, receive their ballot, and make their ballot selections without assistance.”).) However, the aspect of printing, signing the envelope, and returning the process cannot be separated from the vote by mail process. If Plaintiffs cannot complete the process of voting by mail privately and independently, then their access to the benefits of this program is restricted.

Lastly, Defendant makes a confusing argument that voters who use a RAVBM system are required to acknowledge that election officials will transfer their selections on their ballot, even though it is submitted on paper, onto an actual ballot. (Dkt. No. 151 at pp. 20-21.) Defendant suggests that, because of this acknowledgement that clearly notes that there will be assistance election officials to return vote by mail ballots, the current system does not infringe on Plaintiffs' ability to vote privately. To the extent Defendant is arguing that Plaintiffs waived their right to vote privately and independently or that they consented to having election officials to review their voting selections, Defendant fails to consider how the county election officials transfer the paper cast ballots onto actual ballots. Voters who mark their voting selections through an RAVBM system sign an attestation acknowledging that their ballot selections will be transferred onto a ballot by an election officials to be tabulated. (Dkt. No. 151-1 (Declaration of NaKesha Robinson) at ¶ 25 and Ex. D.) To do so, election officials separate the voter's identification envelope from the paper record and then transfer the voter's selection from the paper record onto an official ballot to be tallied. (Dkt. No. 151-1 at ¶ 24.) Defendant refers to this process as “duplicating”. (Dkt. No. 151 at p. 6.) With duplicating, the envelope identifying the identity of the vote is separated from the actual ballot, so the election officials duplicating the ballot do not know who actually made those voting selections. In contrast, if Plaintiffs need assistance to print, sign, and return their ballot, they must obtain that help from someone in person. The assistant then learns of Plaintiffs' specific votes. In other words, the privacy and secrecy of the disabled voters' selections are disclosed to another person and are compromised. However, with duplicating, the envelope identifying the identity of the voter is separated from actual ballot, so the election officials duplicating the ballot do not know who actually made those voting selections. (*Id.*)

***

In conclusion, the Court determines that requiring Plaintiffs with print disabilities to obtain assistance from another person to print and return their ballots denies them meaningful access to the vote by mail program and, therefore, violates the ADA, the Rehabilitation Act, and Section 11135. Accordingly, the Court GRANTS Plaintiffs' motion and DENIES Defendant's motion on the merits of Plaintiffs' claims. However, as Defendant clarified at the hearing, the Court may still address potential concerns regarding when crafting a remedy for Plaintiffs' claims. The Court finds that further briefing and/or testimony on the remedy portion would be beneficial and, thus, RESERVES RULING on the remedy.

**B. Motion to Exclude Expert Testimony**

**1. Applicable Legal Standard on Motion to Exclude Expert Testimony.**

Pursuant to Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

District courts act as the gatekeeper for expert testimony by applying Rule 702 to ensure evidence is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (trial judges, as gatekeepers, must ensure that the expert testimony is relevant and reliable, "which does not include unsupported speculation and subjective beliefs."). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation omitted). Assessing an expert's reliability is a "fact-

specific inquiry" that depends on "the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]he relevant reliability concerns may focus upon personal knowledge or experience" of the expert."). The party offering the expert carries the burden of proving admissibility. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Palantir Techs. Inc. v. Abramowitz*, 2022 WL 22913842, at *12 (N.D. Cal. Nov. 3, 2022) (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendment) ("[an expert] relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."); *640 Octavia, LLC v. Pieper*, 2019 WL 1201581, at *2 (N.D. Cal. Mar. 14, 2019) (finding expert report was "fundamentally flawed" where he relied "solely on his experience to explain the conclusions he drew from the discovery in this case without explaining why and how he came to his conclusions.").

"Federal Rule of Evidence 704(a) provides that expert testimony that is 'otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Mukhtar v. California State University*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002) (quoting Fed. R. Evid. 704(a)). However, "an expert witness cannot give an opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. . . . They do not testify about the law."). Such an opinion does not assist the jury in making a decision, but instead "attempts to substitute the expert's judgment for the jury's." *Mukhtar v. California State University*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002) (quoting *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir. 1994)), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.,* 740 F.3d 457 (9th Cir. 2014).

**2. Defendant's Motion to Strike Plaintiffs' Experts.**

Defendant moves to strike the two opinions offered by Plaintiff's expert Lou Ann Blake. Blake's first opinion concerns the accessibility of California's RAVBM system for voters with

United States District Court
Northern District of California

print disabilities. However, because the Court did not need to consider this opinion when addressing the parties' cross-motions for summary judgment, the Court DENIES Defendant's motion as to Blakes' first opinion as MOOT.

Defendant moves to strike Blake's second opinion concerning the viability of returning ballots electronically. Defendant argues that Blake did not prepare this opinion with sufficient intellectual rigor and that her opinion lacks a sufficient factual basis. The Court declines to strike Blake's opinion on this basis. If Plaintiffs elect to rely on Blake's opinion or call Blake as a witness in support of their proposed remedy, Defendant will be able to attack her opinions or cross-examine her to show the asserted weaknesses. Accordingly, the Court DENIES Defendant's motion to exclude Blake's opinions.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' motion and DENIES IN PART Defendant's motion for summary judgment. The Court GRANTS Plaintiff's motion and DENIES Defendant's motion as to the merits and finds that the inability of Plaintiffs to independently return their paper ballots without assistance violates the ADA, the Rehabilitation Act, and Section 11135. However, the Court RESERVES RULING as to the remedy for this violation. The Court HEREBY SCHEDULES a Case Management Conference on October 19, 2026, to address the remedy portion of their cross-motions for summary judgment. By no later than noon on October 13, 2026, the parties shall file a joint case management statement to address their proposed methods for and timing of addressing the remedy issue. In particular, the parties shall address whether they request to present live testimony on this issue. The Court FURTHER ORDERS that the pretrial conference and trial are vacated and will be reset, if necessary, at the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

case management conference. The Court, thus, DENIES the parties' stipulation and their joint administrative motion to extend the pretrial and trial schedule as MOOT. (Dkt. Nos. 165, 166.)

The Court DENIES Defendant's motion to strike expert testimony.

**IT IS SO ORDERED**.

Dated: October 2, 2026

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California